STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. MARVIN
F. BURTEN, ET AL, DEFENDANTS-RESPONDENTS.

Superior Court of New Jersey
Law Division Union County

Decided June 20, 1986.

342

*Craner, Nelson, Satkin & Glazner,* attorneys for the State.

*Grotta, Glassman & Hoffman,* attorneys for defendant Burten.

*Robinson, Wayne, Levin, Riccio & LaSala,* attorneys for defendant Kaskel.

*Arnoff & Merin,* attorneys for defendant Kaskel.

*Alan A. Sant'Angelo,* Dep. Atty. Gen. (Amicus Curiae).

WERTHEIMER, J.S.C.

The principal issue presented by this case is whether the Federal Employee Retirement Security Act (ERISA), 29 *U.S.C.* §§ 1001–1381 (1976), precludes criminal prosecution under *N.J. S.A.* 2A:170–90.2, for the failure of the employer to make contributions to an employee pension plan. At oral argument an issue arose whether the Complaint charged conduct involving the pension fund alone or included activity pertaining to the Welfare Fund. Although this issue raised at oral argument will be discussed it has no effect on the impact or import of this Opinion. The principal issue will be analyzed in two steps: first, whether *N.J.S.A.* 2A:170–90.2 "relate(s) to" employee benefit plans within the meaning of ERISA § 514, 29 *U.S.C.* § 1144 and second, if so, whether it is preempted by ERISA.

In this case the State is a private litigant seeking to collect monies allegedly owed by a corporation by forcing payment of the alleged debt from selected corporate officers. The Local 478 Trucking and Allied Industries Pension Fund ("Local 478 Fund") and Local 478, International Brotherhood of Teamsters ("Union") initiated this criminal action pursuant to *N.J.S.A.* 2:A170–90.2 against four officers of the bankrupt Branch Motor

Express Company ("Branch") to collect delinquent pension contributions. It is alleged that Branch failed to pay monies owed to the Local 478 Fund.

This action was instituted in the Township of Union Municipal Court. John A. Craner, counsel for the complainants, was designated by the Union Municipal Court as the acting prosecutor for the purpose of representing the State in this action. Subsequently, counsel for defendants made a motion before the Union Municipal Court to dismiss the Complaint alleging, *inter alia*, that the Employee Retirement Income Security Act, 29 *U.S.C.* § 1001 et seq. (ERISA) preempted *N.J.S.A.* 2A:170–90.2 The Municipal Court granted the motion and dismissed the Complaint in its entirety.

An appeal of the Municipal Court's Order of Dismissal was filed by the State. Defendants moved to dismiss the appeal on the ground that it was not timely filed. The motion was granted by the Honorable Edward McGrath, J.S.C. The State then appealed Judge McGrath's Order to the Appellate Division. The Appellate Division granted the appeal and the State's appeal *de novo* was reinstated in the Superior Court. 207 *N.J.Super.* 53. The matter, following the remand, is presently before this Court on the defendants' motion to dismiss the Complaint on the grounds that the State statute is preempted by ERISA, *inter alia.*

Before discussing the preemption issue, we must decide what is the exact charge before this Court, and depending upon that finding, whether the Complaint can now be amended. The Municipal Court Complaint names as complainant "Trustees of Joint Welfare Fund of Employers of Local 478, IBT" and alleges that defendants failed to make contributions that were required to the "Pension Fund." No Complaint refers to contributions to Welfare Benefit Plans. The State, through appointed private counsel, claims that the required contributions were neither made to the Pension Fund nor the Welfare Fund. The State's counsel takes the position in his letter brief dated May

22, 1986 that "no one paid particular attention to the specific allegation in the Complaints until most recently", stating that the discrepancy was a mere clerical or administrative error of the Clerk of the Municipal Court.

R.7:10–2 pertains to the Amendment of Municipal Court Complaints. Under the best of circumstances it does not permit an amendment if it "charges a different substantive offense (other than a lesser included defense)." It is unclear from the Rule or the Comments what is meant by a different substantive offense, but *Words & Phrases* and *Black's Law Dictionary,* 5 Ed., both define a "substantive offense" as follows: "A substantive offense is one of itself and not dependent upon another." Clearly, in this case both failures to make contributions to the pension and/or welfare funds are separate maintainable causes. A defendant could be found guilty of one and not the other, so they are not dependent upon each other and are "different." Therefore, the suggested amendment is barred by *R.*7:10–2. Any new charge against defendants is also barred by *N.J.S.A.* 2C:1–6(b)(2).

In deciding whether a federal law preempts a state statute, the Court must determine Congress' intent in enacting the federal statute at issue. In ERISA, Congress made its intent known in what has been called "the most sweeping federal preemption statute ever enacted by Congress." *California Hospital Assn. v. Henning,* 569 *F.Supp.* 1544, 1546 (D.C.Cal.1983). The pertinent part of 29 *U.S.C.* § 1144(a) reads:

> Except as provided in sub-section (b) of this section, the provisions of this sub-chapter ... shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.

When the House of Representatives and Senate initially passed ERISA, the preemption provisions contained in the House and Senate versions differed substantially from each other and from the present statute. The House version limited preemption to enumerated areas expressly covered by the bill. H.R. 2, 93d Cong., 2d Sess. § 514(a), *reprinted in* 3 Legislative

History of ERISA prepared by the sub-committee on Labor of the Senate Committee on Labor and Public Welfare (1976) ("Legislative History") 4057–58, passed by House at 120 Cong. Rec. 4782 (Feb. 28, 1974), *reprinted in* 3 Legislative History 3896. The Senate version preempted this act on the "Welfare and Pension Plans Disclosure Act...." H.R. 2, 93d Cong., 2d Sess. § 699(a), *reprinted in* 3 Legislative History 3820, passed by Senate at 120 Cong.Rec. 5011 (Mar. 4, 1974), *reprinted in* 3 Legislative History 3598.

Senator Javits, the then-ranking minority member of the Senate Committee on Labor and Public Welfare, explained the change from the original limited preemption to the broad provision enacted by the Legislature:

> Both House and Senate bills provided for preemption of State law, but ... defined the perimeters of preemption in relation to the areas regulated by the bill. Such a formulation raised the possibility of endless litigation over the validity of State action that might impinge on Federal regulation, as well as opening the door to multiple and potentially conflicting State laws hastily contrived to deal with some particular aspect of private welfare or pension benefit plans not clearly connected to the Federal regulatory scheme. [120 Cong.Rec. 29942 (1974), *reprinted in* 3 Legislative History 4770–71.]

Representative Dent stated:

> Finally, I wish to make note of what is to many the crowning achievement of this legislation, the reservation to Federal authority the sole power to regulate the field of employee benefit plans. With the preemption of the field, we round out the protection afforded participants by eliminating the threat of conflicting and inconsistent State and local regulation. [120 Cong.Rec. 29197 (1974).]

Finally, Senator Harrison Williams remarked:

> It should be stressed that with the narrow exceptions specified in the bill, the substantive and enforcement provisions of the conference substitute are intended to preempt the field for Federal regulations, thus eliminating the threat of conflicting or inconsistent State and Local regulation of employee benefit plans. This principle is intended to apply in its broadest sense to all actions of State and local governments, or any instrumentality thereof, which have the force or effect of law." [*Id.* at 29933.]

*See also, Shaw v. Delta Air Lines, Inc.*, 463 *U.S.* 85, 99, 103 *S.Ct.* 2890, 2899, 77 *L.Ed.*2d 490, 502 (1983), for a discussion of the legislative history of ERISA.

From the Legislative History it is clear that Congress intended to preempt the field for Federal regulation. The next step is

to determine whether *N.J.S.A.* 2A:179–90.2 "relate(s) to" an employee benefit plan. *N.J.S.A.* 2A:170–90.2 in pertinent part reads as follows:

> In addition to any other penalty or punishment otherwise prescribed by law, any employer who is a party to an agreement made with a collective bargaining agent or with an individual employee which requires the payment of (a) wages or of benefits, or (b) contributions for the support of a fund out of which benefits may be paid, including, without limitation upon the generality of the foregoing, any pension fund, welfare fund or any fund for the support of any program or programs of education or vacation benefits for the employees covered by such agreement, or any fund for the support of any apprenticeship program or programs in any trade, profession or occupation concerned in such agreement, or (c) other payments in connection with the employment of any employee or employees and who knowingly and willfully fails or refuses to make such payments within 30 days after such payments are required by said agreement to be made, or, in the case of wages, if the agreement fails to specify the time of payment, then within the time specified for the payment of wages ... is a disorderly persons. If such employer is a corporation, the officer or employee responsible for such willful failure or refusal is a disorderly person.

In *Shaw v. Delta Air Lines, Inc.*, 463 *U.S.* 85, 96–97, 103 *S.Ct.* 2890, 2899–2900, 77 *L.Ed.*2d 490 (1983), the Supreme Court held that the language of 29 *U.S.C.* § 1144(a) should be given broad effect: "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." This broad application furthers a major policy objective of ERISA—*uniformity* in employee benefit laws. Congress realized that various state regulations of employee benefit plans had become a major concern to employers with plants, divisions, or employees scattered in numerous states, and a broad preemption provision appears to be an integral part of ERISA's response to that concern. *Holland v. Burlington Industries, Inc.*, 772 *F.2d* 1140, 1147 (4th Cir.1985).

In *Alessi v. Raybestos-Manhattan, Inc.*, 451 *U.S.* 504, 101 *S.Ct.* 1895, 68 *L.Ed.*2d 402 (1981), the Supreme Court adopted a broad construction of ERISA's general preemption clause, holding that the law applied to a New Jersey workers' compensation law that prohibited set offs of workers' compen-

sation payments against pension benefits. The Court held the statute "related to" pension plans because it foreclosed a method of calculating pension benefits. [451 *U.S.* at 524–525, 101 *S.Ct.* at 1906–07.] The Court added "it is no moment that New Jersey intrudes indirectly, through a workers' compensation law rather than directly, through a statute called 'pension regulation.'" [*Id.* at 525, 101 *S.Ct.* at 1907.] In order to avoid being preempted, a state law, in addition to being an exercise of traditional police powers, must also affect the plan "in too tenuous, remote or peripheral a manner to warrant a finding that the law 'relates to' the plan." The New Jersey Statute at issue is not an indirect attempt to regulate employee benefits but directly seeks to impose penal sanctions for failure by the employer to contribute to an employee benefit plan that is established as a result of collective bargaining. The title of the State statute is "Failure of employer to pay wages or benefits within time specified; penalty for violation." Therefore, *N.J. S.A.* 2A:170–90.2 clearly "relates to" an employee benefit plan.

At oral argument the State, through the private attorney appointed to prosecute the matter, raised for the first time the position that ERISA does not preempt or apply to Welfare Benefit Plans. Not only was this argument raised late in the proceedings, but it appears to be disingenuous at best. Having ruled that the Complaint does not charge a welfare plan violation, but only a pension plan violation, this Court nevertheless finds, assuming *arguendo* a welfare plan violation was charged, it too would be preempted.

The State incorrectly argues that 29 *U.S.C.* § 1003(a), provides that employee benefit plans are exempt from coverage under ERISA. 29 *U.S.C.* § 1003(a), which defines coverage under the act, specifically provides that ERISA coverage does *not* apply to employee welfare benefit plans. 29 *U.S.C.* §§ 1051 and 1081.

The definition of "Employee Welfare Plans" is found in 29 *U.S.C.* § 1002(1) and reads as follows:

any plan, fund or program ... established or maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (a) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds or prepaid legal services, or (b) any benefit described in section 186(c) of this title....

Based upon this definition this Court has found the following cases in which courts have preempted State statutes that dealt with employee benefit plans:

(1) *Shaw v. Delta Air Lines, Inc.*, 463 *U.S.* 85, 103 *S.Ct.* 2890, 77 *L.Ed.*2d 490 (1985), dealt with pregnancy benefits, and New York's disabilities benefits law was preempted by ERISA;

(2) *National Carriers' Conference Committee v. Heffernan*, 454 *F.Supp.* 914 (U.S.D.C.Conn.1978). Congress preempted the state's power to tax benefits paid by an employee welfare benefit plan by enacting ERISA;

(3) *Metropolitan Life v. Commonwealth of Massachusetts*, 471 *U.S.* 724, 105 *S.Ct.* 2380, 85 *L.Ed.*2d 728 (1985).

In addition to the above cases there are many more cases in which state statutes dealing with Employee Welfare Plans were found to be preempted by ERISA.

■ Having determined that *N.J.S.A.* 2A:170–90.2 "relates to" an employee benefit plan, it must now be determined whether any exception in ERISA, 29 *U.S.C.* § 1144(b), saves the New Jersey Statute from preemption. Congress specifically enumerated four exceptions to the broad scope of preemption. One of those exceptions, section 514(b)(4), exempts "any general applicable criminal law of the state." 29 *U.S.C.* § 1144(b)(4). In an article entitled *"Federal Preemption of State Law Under the Employee Retirement Security Act of 1974 "* published in 46 Univ. of Chicago Law Rev. 23 (1978) at page 72, the following is written:

Presumably, a criminal law that is 'generally applicable' is one that has been enacted by a state with the intention that it apply to conduct generally rather than to an activity specifically related to employee benefit plans.... The savings provision for state criminal law was needed to ensure that otherwise

illegal activity does not escape prosecution because a state criminal law may 'relate to' an employee benefit plan. ERISA itself provides criminal sanctions for activity specifically related to employee benefit plans. Congress decided which of these activities it wished to subject to criminal sanctions and which penalties it wishes to attach to these activities. Because Congress saved only "generally applicable" state criminal laws from preemption, it is fair to conclude that it did not want the states to subject other activities related to employee benefit plans to criminal sanctions, or to increase the sanctions that ERISA provides, unless the particular act constitutes a crime under a state law not specifically aimed at benefit plans.

The Court in *Bucyrus-Erie Co. v. Dep't. of Industry and Labor*, 599 *F*.2d 205 (7th Cir.1979), had to determine whether the Wisconsin fair employment laws "relate to" employee benefit plans. The Court held that the exception in 29 *U.S.C.* § 1144(b)(4) indicates an intention that the word "relate" extend even to laws of general applicability (as well as an intention to preempt criminal statutes limited in application to Welfare benefit plans.) The exception would otherwise have been unnecessary. *Id.* at 208. In *Goldstein v. Mangano*, 99 *Misc.*2d 523, 417 *N.Y.S.*2d 368 (Civ.Ct.Kings Cty.1978), the Court decided that New York Labor Law § 198–c was not preempted by ERISA. New York Labor Law § 198–c is the statute upon which *N.J.S.A.* 2A:170–90.2 was patterned. The Court in *Mangano* at 374 held that: "A generally applicable criminal law is one which extends to the entire State and embraces all persons or things of a particular class. 1 *McKinney's* Consolidated Laws of New York, Statutes Sec. 32(b). The Penal Law of the State is a general law. It has general application to all of the inhabitants of the State. *Id.* at 374–375. However, five years later in *Trustees of Sheet Metal Workers' International Assoc. Production Workers Welfare Fund v. Aberdeen Blower and Sheet Metal Workers, Inc.*, 559 *F.Supp.* 561 (E.D.N.Y.1983), the U.S. District Court held that N.Y. Labor Law 198–c was preempted by ERISA. The Court, at 562, held:

A New York Civil Court opinion has held that section 198–C is a "generally applicable law" of New York State, and that therefore a civil action based on that law is not superseded by ERISA legislation. *Goldstein v. Mangano* [99 *Misc.*2d 523], 417 *NYS 2d* 368 (Civ.Ct.Kings Cty.1978).

> The issue must, of course, be decided not by reference to classifications made by the state of its laws but by ascertaining what Congress' language means. One cannot fairly attribute to Congress that purpose in 29 *U.S.C.* § 1144(b)(4) to except from preemption all the criminal laws of the state. To do so would be to read out of the section the words "generally applicable". Every criminal law, if it is to be consistent with the constitution, is general in the sense that it must apply not to specific arts of a specific individual but to some class of circumstances.

The Court went on to state: "No doubt Congress did not wish to supersede criminal laws applying in general terms to conduct such as larceny or embezzlement." But if the words "generally applicable" contained in the exception are to mean anything, laws aimed specifically at benefit plans cannot stand.

In *Blue Cross and Blue Shield of Alabama v. Peacock's Apothecary, Inc.*, 567 *F.Supp.* 1258 (N.D.Ala.1983), the plaintiffs alleged that § 34–23–13 of Alabama's Pharmacy Act was a generally applicable criminal law and thus not preempted. The Court held, "Because § 34–23–13 is directed primarily at pharmacists ... the Pharmacy Act is not a generally applicable criminal law." *Id.*, at 1276. The Court in *Baker v. Caravan Moving Corp.*, 561 *F.Supp.* 337, 341 (N.D.Ill.1983), stated in dicta, "State criminal laws aimed specifically at employee benefit plans were not meant to be left in tact by § 514(b)." In *Commonwealth v. Federico*, 383 *Mass.* 485, 419 *N.E.*2d 1374 (1981), the principal issue presented was whether ERISA, 29 *U.S.C.* §§ 1001–1381 (1976), precluded criminal prosecution under M.G.L.c. 151D, § 11, for the failure of employers to make contributions to employee pension plans regulated by ERISA. The Court in *Commonwealth v. Federico*, 419 *N.E.*2d at 1377, held:

> The § 1144(b)(4) exception from preemption for "generally applicable" State criminal laws appears designed to prevent otherwise criminal activity from being immunized from prosecution simply because the activity "relates to" an employee benefit plan. The exception seems directed toward criminal laws that are intended to apply to conduct generally-criminal laws against larceny and embezzlement, for example. By virtue of 1144(b)(4), a state is not precluded from prosecuting, under a theft statute applicable to the entire population, an employer who steals money from an employee benefit plan, simply because the theft involved such a plan. But by limiting the § 1144(b)(4) exception to

criminal laws of general applicability, Congress apparently intended to preempt State criminal statutes aimed specifically at employee benefit plans.

The United States Secretary of Labor, in an Opinion Letter, has reached the same conclusion:

The labor department stated that if the general grand larceny provisions of a state code applied to pension trustees, the exception provided by section 514(b)(4), 29 *U.S.C.* 1144(b)(4) would come into play. However, a law which applies only to welfare and pension plans is not a 'generally applicable' law.

It is clear from the cases cited above that *N.J.S.A.* 2A:170–90.2 does not fall within the exception to ERISA urged upon this Court and found in 29 *U.S.C.* § 1144(b)(4). *N.J.S.A.* 2A:170–90.2 is a criminal statute that was specifically promulgated to deal with employee benefit plans; as such it is not a "generally applicable" criminal law. If this Court were to hold otherwise then any time the State decided to regulate employee benefit plans, the Legislature could simply enact a statute imposing penal sanctions.

■ The Attorney General has encouraged this Court in its brief *amicus curiae* to at the very least perform "judicial surgery" to restrict any holding of preemption to that part of the State law applicable here, e.g., funded plans, and to leave to State regulation that part of the law that relates to unfunded plans which are the product of individual agreements with employees. "Judicial surgery" is a recognized judicial tool. *See U.S.A. Chambers of Commerce v. State*, 89 *N.J.* 131, 151–152 (1982), citing Justice Handler's Opinion in *N.J. Chamber of Commerce v. N.J. Elec. Law Enforce. Comm'n.*, 82 *N.J.* 57, 75 (1980). However, Congress has presented a patent operative field here. It makes no distinction between funded and unfunded plans. ERISA supersedes *"any and all* State laws insofar as they may ... relate to *any* employee benefit plan ..."* except as discussed above. 29 *U.S.C.* § 1144(a). [Emphasis supplied.]

Although it is clear that the "exercise of federal supremacy is not lightly to be presumed," *Alessi v. Raybestos-Manhattan, Inc.*, 451 *U.S.* 504, 522, 101 *S.Ct.* 1895, 1905, 68 *L.Ed.*2d 402

(1981), this Court holds "that Congress has unmistakably ordained" preemption. *Florida Lime & Avocado Growers v. Paul*, 373 *U.S.* 132, 142, 83 *S.Ct.* 1210, 1217, 10 *L.Ed.*2d 248 (1963). ERISA is a comprehensive statute specifically designed to promote the interests of employees and their beneficiaries in employee benefit plans. *Shaw v. Delta Air Lines, Inc.* While New Jersey's law may not be in conflict with ERISA, the broad preemption of ERISA receives its life from the Supremacy Clause of the United States Constitution, *U.S.Const.*, Art. VI, cl. 2.

It is unnecessary to consider defendants other arguments for dismissal because this Court holds that *N.J.S.A.* 2A:170–90.2 is preempted by ERISA for the foregoing reasons.

Defendants are to submit an Order consistent with this Opinion.