STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
RAYNARD TOWNSEND, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted December 14, 1987—Decided January 21, 1988.

Before Judges DREIER and BAIME.

*Alfred A. Slocum,* Public Defender, attorney for appellant (*Capitola Young,* Designated Counsel; of counsel and on the letter brief).

*W. Cary Edwards,* Attorney General of New Jersey, attorney for respondent (*Donald S. Burak,* Deputy Attorney General; of counsel and on the letter brief).

The opinion of the court was delivered by

DREIER, J.A.D.

Defendant appeals from the revocation of his probation and his resentencing to a 10–year term of imprisonment with a two-year parole disqualifier. Defendant was convicted on a *retraxit* plea of guilty to an amended count of second degree aggravated assault, *N.J.S.A.* 2C:12–1b(1), in return for which the State dismissed another count of aggravated assault, and two counts of aggravated assault with a deadly weapon, and agreed to make no sentencing recommendations. At the plea hearing, Judge E. Stevenson Fluharty, informed defendant that his guilty plea subjected him to a maximum sentence of ten years with a five-year period of parole ineligibility and/or a $100,000 fine. He further explained to defendant that he could be placed on probation for five years and ordered to pay restitution to the victim. The victim had suffered a fractured left zygomatic arch (a facial bone close to the jaw) and incurred $2400 in uninsured medical expenses. The judge also warned defendant specifically that if he should receive probation along with a restitution obligation, and if he failed to make that restitution, defendant could be resentenced to a 10–year term with a five-year period of parole ineligibility.

Defendant told the Probation Department on April 13, 1983 that he was a full-time laborer earning approximately $150.00 per week and that he had been employed there "from August of 1980 until the present." At the sentencing proceeding

defendant also advised the court that he was employed and capable of making restitution. The court noted that, based on defendant's prior record, the presumptive term of incarceration was certainly appropriate for defendant. However, the court was concerned with the fact that if defendant was incarcerated, the victim would not be recompensed for his uninsured medical bills. Therefore, based on the "best interests to. the victim," the presentence report, the nature of the crime and "the fact that the defendant is employed," the court sentenced defendant on May 13, 1983 to a five-year period of probation subject to drug evaluation and treatment if necessary, restitution of $2399.01 payable in $50.00 per month installments, and a Violent Crimes Compensation Board Penalty of $25.00. Defendant was also instructed that if he

> fails to make restitution or in any way violates the terms and conditions of probation, he may be resentenced for [a] custodial term as may be appropriate under the circumstances.

In a petition dated September 28, 1984, the Probation Department requested the Court to revoke defendant's probation and to incarcerate him because he was $675.00 in arrears, having paid only $125.00 of his restitution. At a probation violation hearing held before Judge Fluharty on November 16, 1984, defendant testified that he has been chronically unemployed and that he had only told the court that he was gainfully employed so that the judge would accept the plea agreement. Since his release he collected $119.00 per month for five months in public assistance; when he was collecting welfare he was paying $95.00 per month in rent to his girlfriend, and he drives, smokes and gambles on the weekends. The judge found that defendant "has willfully and notoriously violated the Order of the Court." The judge then sentenced defendant on November 30, 1984 to a ten-year custodial term with a two-year parole ineligibility period.

Defendant contends on appeal that by revoking defendant's probation for his failure to pay restitution, the trial judge violated the Fourteenth Amendment and abused his discretion.

██ Defendant argues that his probation was revoked and a term of incarceration was imposed solely because he lacked the funds to pay restitution, a practice that defendant alleges is prohibited by the United States Constitution. The Fourteenth Amendment precludes a state court from automatically revoking probation and imposing a prison term for nonpayment of restitution. In *Bearden v. Georgia*, 461 *U.S.* 660, 672, 103 *S.Ct.* 2064, 2072, 76 *L.Ed.*2d 221, 233 (1983), the Supreme Court held that in probation revocation proceedings for failure to pay restitution, the sentencing court must determine if defendant "willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay." If the court makes this determination, then it may revoke defendant's probation, and defendant may be resentenced to a term within the court's sentencing authority. *Ibid.* If defendant cannot pay his restitution despite bona fide efforts, then the sentencing court must consider whether punishment other than incarceration would adequately meet the State's interests in punishment and deterrence. *Ibid.* Only if the court determines that there is no appropriate alternative to incarceration may a defendant who has made bona fide efforts to pay be imprisoned for a failure to pay his restitution. *Ibid; See also United States v. Palma*, 760 *F.*2d 475, 478–479 (3d Cir.1985).

██ The New Jersey Code of Criminal Justice embodies the Supreme Court's requirement that there must be evidence and findings that defendant was responsible for the failure to make restitution. *N.J.S.A.* 2C:45–3a(4) states that

> [n]o revocation of suspension or probation shall be based on failure to pay a fine or make restitution, unless the failure was willful.

Furthermore, New Jersey has not imposed stricter standards on probation violation hearings than are required by the United States Constitution. *State v. Reyes*, 207 *N.J.Super.* 126, 135 (App.Div.), certif. den. 103 *N.J.* 499 (1986); *see also Gagnon v. Scarpelli*, 411 *U.S.* 778, 93 *S.Ct.* 1756, 36 *L.Ed.*2d 656 (1973) and *Morrissey v. Brewer*, 408 *U.S.* 471, 92 *S.Ct.* 2593, 33

*L.Ed.*2d 484 (1972). The sentencing court may only find that defendant violated probation if

> the court is satisfied by a preponderance of the evidence that defendant has inexcusably failed to comply with a substantial requirement imposed as a condition of probation. [*Reyes, supra,* 207 *N.J.Super.* at 137].

The trial court here satisfied this requirement, because at the probation violation hearing defendant pled guilty to the charge that he violated a special condition of probation to make restitution in the amount of $2,399.01 at the rate of $50.00 per month. Thus, the only constitutional and statutory issue remaining to be addressed is whether the trial judge considered the reasons for defendant's inability to pay before defendant's restitution was converted into a prison sentence.

Defendant argues that the judge resentenced defendant for "a mere failure to make a financial obligation." The hearing in the Law Division, however, was held precisely to investigate the cause of the violation of probation to determine if the failure to pay was willful. At the hearing defendant contended that he was unable to pay his restitution because he is unemployed and that he has been unsuccessful at obtaining employment because he is blind in one eye. Defendant testified that he had filled out applications for unskilled laborer positions at five manufacturing plants and a temporary employment agency since his original probation sentence was imposed but that the companies refused to hire him because he was a "hazard" without vision in one eye. Defendant admitted that he has been blind in his left eye since he was five years old and that he has never been able to hold a job because of this disability. Defendant agreed, however, that he could sweep floors or do something that would not require him to be around machinery.

Defendant admitted to the court that he lied to the Probation Department when he stated that he was making $150.00 week. Defendant admitted that he further lied to the court when he said that he could make restitution because he thought he would not be incarcerated if he said he could make restitution. Defendant also admitted that he drinks socially on Saturday

nights and smokes occasionally and that his girlfriend, who collects $327.00 a month on county welfare, pays for his food, his drinks and his cigarettes. Defendant also testified that his girlfriend gave him the $125.00 in restitution that was paid and that she paid the $1700 in legal fees and the $25 Violent Crimes Compensation Board penalty. When the court asked defendant why he did not apply his beer and cigarette money toward his restitution payment, defendant merely responded that "it makes sense."

Defendant testified that he received $119.00 each month from January 1984 through May 1984 in municipal welfare and that during that time he gave his girlfriend $95.00 per month. When the judge first asked defendant why he did not apply the remaining $24.00 per month to his restitution obligation, defendant testified that he spent that money on "socks and maybe underwear." When the judge asked him how many pairs of socks he bought in six months, defendant admitted that he spent the rest of his money playing cards three times a month.

In pertinent part, Judge Fluharty made the following findings:

> When a person has an obligation, which is making restitution to an injured individual that they were responsible for injuring, and they would rather go out and gamble and drink and smoke than make that restitution, I don't think that they are really dealing fairly with the Court. They are not meeting their obligation that has been imposed upon them. I think that they are openly and notoriously and willfully violating the Order of the Court with respect to the Order to make restitution. I indicated that I don't believe the gentleman when he tells us that he couldn't get a job. He lays great stress on the fact that he only has one eye, but he has had only one eye since he was five years old. I have great sympathy. I don't believe for one minute that there is not work out there that he could get, if it were not beneath him. What he is endeavoring to do, obviously, is seek jobs that suit his convenience, when it suits his convenience to seek such jobs.... *I am absolutely convinced, without a question, that this gentleman has not sincerely, diligently and with any degree of sincerity looked for work.*
>
> Therefore I find that he has willfully and notoriously violated the Order of the Court. [Emphasis supplied].

At the sentencing proceeding on November 30, 1984, the judge repeated that he was satisfied that defendant's failure to

make restitution was willful. Because the "very purpose for which the probation and restitution was ordered has not been accomplished," the court resentenced defendant, and made a very relevant comment:

> I would never sentence the defendant as I'm about to because he didn't make restitution. What I do under the law, and I have a right to do it, and the legislature in its wisdom gave me such a right, when I find in fact there has been a violation of probation, then I re-evaluate the whole situation and I impose that sentence which I felt was appropriate to have been imposed in the first instance for the crime of which the defendant pled guilty.

In sum, the trial court clearly considered the reasons for defendant's inability to pay in conformance with *Bearden, supra,* and *N.J.S.A.* 2C:45–3a(4).

■ Defendant argues that by not considering whether alternative methods of punishment to imprisonment were appropriate, the trial court violated defendant's Fourteenth Amendment rights. In *Bearden, supra,* the Supreme Court requires a consideration of alternatives to incarceration only when defendant has failed to pay restitution through no fault of his own. 461 *U.S.* at 672, 103 *S.Ct.* at 2072, 76 *L.Ed.*2d at 233; *see also Black v. Romano,* 471 *U.S.* 606, 614, 105 *S.Ct.* 2254, 2259, 85 *L.Ed.*2d 636, 644, reh'g den. 473 *U.S.* 921, 105 *S.Ct.* 3548, 87 *L.Ed.*2d 671 (1985) (where the Court noted that *Bearden* "suggests the absence of a more general requirement" to examine alternatives to incarceration); *see also* the New Jersey Supreme Court's annotation of *Bearden* in *State v. Abbati,* 99 *N.J.* 418, 430 (1985). The trial court's findings, sufficiently supported by defendant's own admissions, reflect that defendant willfully failed to pay his restitution, obviating the constitutional need to consider alternative punishments.

■ Defendant also alleges that the trial court abused its sentencing discretion. The judge, however, complied with the requisite sentencing provisions. Once the court revokes probation, the court may impose "any sentence that might have been imposed originally for the offense for which he was convicted." *N.J.S.A.* 2C:45–3b. The trial judge sentenced defendant not only to the maximum ten-year sentence initially described to

him as the penalty for not paying restitution, but also to a two-year parole ineligibility pursuant to *N.J.S.A.* 2C:43–6a(2) and 6b. The sentencing principles of *State v. Roth*, 95 *N.J.* 334, 363–364 (1984), apply to defendant's resentencing. *State v. Reyes, supra*, 207 *N.J.Super.* at 137. The Court in *Roth* explained that before a trial judge can sentence up to the statutory maximum or down to the statutory minimum, the judge must examine and weigh the aggravating and mitigating factors listed in *N.J.S.A.* 2C:44–1. *Roth, supra*, 95 *N.J.* at 359. Judge Fluharty devoted five pages in the transcript to a thorough discussion of the aggravating and mitigating factors, in full compliance with *Roth* and *State v. Kruse*, 105 *N.J.* 354, 363 (1987), both of which require a qualitative analysis of the sentencing factors. He additionally gave separate consideration to the imposition of a period of parole ineligibility, which is also required by *Kruse*, 105 *N.J.* at 358–359.

Affirmed.