259 N.J. Super. 274 (1992)
612 A.2d 952
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
LOUIS PULASTY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 4, 1992.
Decided August 4, 1992.
*275 Before Judges LONG, BAIME and THOMAS.
John L. Pritchard argued the cause (A-1609-90T4) on behalf of appellant (Rajat K. Gupta, on the brief).
Martha A. Suhayda-Vogt argued the cause (A-3280-90T1) on behalf of appellant.
*276 Hilary L. Brunell argued the causes on behalf of respondent (Herbert H. Tate, Jr., Essex County Prosecutor, attorney).
The opinion of the court was delivered by LONG, J.A.D.
In January 1986, defendant Louis Pulasty entered a guilty plea to one count of second-degree theft by deception, contrary to N.J.S.A. 2C:20-4, as a part of a plea bargain involving a twenty-nine count indictment which charged him with embezzlement of more than $600,000.00 from the New Jersey State Firemen's Association of which he was treasurer. As a part of the plea bargain, Pulasty agreed to pay restitution to his former employer. He was sentenced to a five-year custodial term and, following a hearing, was ordered to pay $453,378.32 in restitution in a lump sum of $200,000.00 with monthly installments of $2,000.00 to follow. After an appeal to this court, the restitution order was modified both as to the amount of the lump sum payment and the monthly installments.
In July 1990, Pulasty moved before the trial judge to eliminate the following provision from the restitution order:
[C]ommencing June 1, 1988 defendant is to assign all rights to his $531.00 per month pension from the New Jersey State Firemen's Association to the New Jersey State Firemen's Association, or if this cannot be accomplished, defendant is to pay through the Essex County Probation Department the sum of $531.00 per month, until the balance of the restitution is discharged.
In support of the motion, Pulasty argued that his entire source of income is the combined Social Security he receives with his wife in the amount of $1,581.00, a $558.00 per month Fireman's Association pension and a $123.00 per month pension from the Foster Wheeler Corporation. He urged that the pensions were insulated from assignment by the Employee Retirement Income Security Act of 1974, 29 U.S.C.A. §§ 1001 to 1461 (ERISA). In agreeing to amend the restitution order to eliminate the assignment, the trial judge stated:
[T]here was and is other monthly income from another pension, from social security benefits, as well as social security benefits to his wife. I take, as I did *277 back on May 6, 1988, all of those things into account in setting the amount of restitution here and I'm not persuaded to amend that amount or to delete anything from that amount. The amount I said was $531.00 a month at that time. I'm not persuaded to amend that in any way other than to delete the portion of the order that requires assignment of pension rights which, of course, was not done in any event.
In 1991, Pulasty moved to withdraw his guilty plea, which motion was denied.
Pulasty now appeals, urging on A-1609-90T4 that:
POINT I:
UNDER ERISA, PENSION BENEFITS MAY NOT BE DIRECTLY OR INDIRECTLY SUBJECTED TO GARNISHMENT OR ANY OTHER LEGAL PROCESS.
POINT II:
THE ANTI-ALIENATION RULES OF ERISA ARE NOT SUBJECT TO JUDICIALLY-CREATED OR EQUITABLE EXCEPTIONS, EVEN IN THE CASE OF A STATE CRIMINAL RESTITUTION STATUTE.
POINT III:
SOCIAL SECURITY BENEFITS ARE EXEMPT FROM DIRECT OR INDIRECT LEVY, ATTACHMENT, GARNISHMENT, OR OTHER LEGAL PROCESS.
POINT IV:
A REASONABLE INTERPRETATION OF ERISA AND THE SOCIAL SECURITY ACT MUST PROHIBIT A RESTITUTION ORDER FOR MONTHLY PAYMENTS UNDER THE CIRCUMSTANCES.
POINT V:
PERIODIC PAYMENTS UNDER A PENSION PLAN CONSTITUTES INCOME SUBJECT TO THE LIMITATIONS ON EXECUTION OF N.J.S.A. 2A:17-50 AND N.J.S.A. 2A:17-56.
POINT VI:
THE STATUTORY LIMITATIONS ON INCOME EXECUTIONS MAY NOT BE CIRCUMVENTED BY AN ORDER WHICH REQUIRES THE JUDGMENT DEBTOR TO PAY INSTALLMENTS FROM THE PROCEEDS OF EXEMPT INCOME.
POINT VII:
THE POWER OF THE COURT TO ENFORCE THE PAYMENT OF RESTITUTION IS LIMITED TO THOSE MEASURES AUTHORIZED FOR THE COLLECTION OF AN UNPAID CIVIL JUDGMENT.
POINT VIII:
UNDER FEDERAL LAW, AN EXECUTION AGAINST A PENSION PAYMENT MAY NOT EXCEED 25 PERCENT OF THE NET AMOUNT EVEN IN THE CASE OF RESTITUTION ORDERS.

*278 POINT IX:
THE MONTHLY PAYMENTS PREVIOUSLY PAID BY THE DEFENDANT SHOULD BE RETURNED TO HIM, WITH INTEREST, AND THE DEFENDANT SHOULD BE AWARDED COUNSEL FEES.
In a separate appeal (A-3280-90T1), Pulasty challenges the trial judge's denial of his motion to withdraw the guilty plea. He contends:
POINT I:
A DEFENDANT MAY WITHDRAW A GUILTY PLEA AFTER SENTENCING TO CORRECT A MANIFEST INJUSTICE; THERE IS NO PROCEDURAL BAR TO HIS WITHDRAWAL.
POINT II:
DEFENDANT'S MOTION TO WITHDRAW HIS GUILTY PLEA WAS TIMELY.
POINT III:
THERE WAS NO FACTUAL BASIS FOR THE DEFENDANTS GUILTY PLEA.
POINT IV:
THE DEFENDANT'S PLEA WAS NOT KNOWINGLY AND VOLUNTARILY MADE, NOR DID HE UNDERSTAND ITS CONSEQUENCES.
POINT V:
DEFENDANT HAD INADEQUATE COUNSEL VIOLATING HIS CONSTITUTIONAL RIGHTS.
We have carefully reviewed this record in light of the claims advanced and have concluded that there is no warrant for our intervention.[1]

A-3280-90T1
We turn first to Pulasty's appeal from the denial of his motion to withdraw his plea five years after it was entered and long after the custodial portion of his sentence was completed. We find the arguments raised in connection with this issue to be entirely lacking in merit. R. 2:11-3(e)(2). This record demonstrates conclusively that Pulasty fully understood the nature and consequences of the plea, intelligently waived his right to proceed to trial, and gave an adequate factual basis to undergird a conviction for second degree theft by deception. There is not a shred of evidence in this record to support his contention *279 that his counsel, who negotiated this substantially beneficial plea, fell short of any objective standard of reasonableness or that, but for counsel's errors, the plea would not have been entered. Hill v. Lockhart, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). We thus affirm the denial of defendant's motion to withdraw his plea.

A-1609-90T4
The more complicated of the two appeals arises out of defendant's contention that ERISA and the Social Security law prohibited the trial judge from directly or indirectly alienating his pension and social security payments. We turn first to ERISA.
Both parties agree that defendant's pension is governed by ERISA, which contains an anti-alienation clause prescribing that: "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C.A. § 1056(d)(1). The legislative history of this provision has been described as "sparse" (Ellis National Bank of Jacksonville v. Irving Trust Co., 786 F.2d 466, 470 (2d Cir.1986)) and inconclusive, General Motors Corp. v. Buha, 623 F.2d 455, 460 (6th Cir.1980). It apparently originated in the House Report from the Committee on Ways and Means, which stated that pension "plans must provide that retirement benefits may not be assigned or alienated, except for voluntary and revocable assignments of not more than 10 percent of the benefits." H.R.Rep. No. 807, 93d Cong., 2d Sess. (1974), reprinted in, 1974 U.S.C.C.A.N. 4639, 4670, 4695. The purpose was "[t]o further ensure that the employee's accrued benefits are actually available for retirement purposes...." H.R.Rep. No. 807, 1974 U.S.C.C.A.N. at 4734. The Joint Conference Report of the House and Senate explained the "alienation" provision as follows:
Under the conference substitute, a plan must provide that benefits under the plan may not be assigned or alienated. However, the plan may provide that after a benefit is in pay status, there may be a voluntary revocable assignment *280 (not to exceed 10 percent of any benefit payment) by an employee which is not for purpose of defraying the administrative costs of the plan. For purposes of this rule, a garnishment or levy is not to be considered a voluntary assignment. [H.R.Conf.Rep. No. 1280, 93d Cong., 2d Sess. (1974), reprinted in, 1974 U.S.C.C.A.N. 5038, 5061].
After some courts had recognized equitable exceptions to the anti-alienation provision, see, e.g., Crawford v. La Boucherie Bernard Ltd., 815 F.2d 117 (D.C. Cir.), cert. denied, 484 U.S. 943, 108 S.Ct. 328, 98 L.Ed.2d 355 (1987); St. Paul Fire and Marine Ins. Co. v. Cox, 752 F.2d 550 (11th Cir.1985); American Telephone & Telegraph Co. v. Merry, 592 F.2d 118 (2d Cir.1979); by allowing the assignment of pension payments to meet family support obligations, Congress amended ERISA in 1984 to include such an exception. See Retirement Equity Act of 1984, Pub.L. No. 98-397, 98 Stat. 1426 (current version at 29 U.S.C.A. § 1056(d)(3)). The legislative history does not suggest that the Congress ever considered other general equitable exceptions to the anti-alienation clause, or a specific exception for criminal restitution. See S.Rep. No. 575, 98th Cong., 2d Sess. 18-19 (1984), reprinted in, 1984 U.S.C.C.A.N. 2547, 2564-65.
Pulasty argues that to the extent that there is any room for interpretation as to the scope of the anti-alienation clause, it has been laid to rest by the United States Supreme Court in its decision in Guidry v. Sheet Metal Workers National Pension Fund, 493 U.S. 365, 110 S.Ct. 680, 107 L.Ed.2d 782 (1990). Guidry resolved a substantial split in the federal circuits as to whether courts could carve out equitable exceptions to the anti-alienation clause. See St. Paul Fire and Marine Ins. Co. v. Cox, supra, 752 F.2d at 552 (felony theft from pension fund threatens ERISA objective of preserving fund for beneficiaries; court can garnish thief's pension to protect fund members from his theft); Stobnicki v. Textron, Inc., 868 F.2d 1460, 1464-65 (5th Cir.1989) (court has power to avoid absurd result not contemplated by anti-alienation provision of ERISA, agreeing with Eleventh Circuit that wrongdoer should not profit from his misdeeds by operation of ERISA's anti-alienation provision); Crawford v. La Boucherie Bernard Ltd., supra, 815 F.2d at *281 121 (where defendants stole more than $900,000.00 from pension in violation of their fiduciary duties, court could order offset of their pension benefits against their judgment debt to the plan). But see United Metal Products Corp. v. National Bank of Detroit, 811 F.2d 297, 300 (6th Cir.1987), cert. dismissed, 485 U.S. 1017, 108 S.Ct. 1494, 99 L.Ed.2d 883 (1988) (there is no fraud exception to the anti-alienation provision of ERISA); Ellis National Bank of Jacksonville v. Irving Trust Co., supra, 786 F.2d at 471 (no ERISA exception for fraud; even where pension plan must pay for fraud of its employee, it cannot garnish that employee's pension); see also Crausman v. Curtis-Wright Corp., 676 F. Supp. 1302, 1304 (D.N.J. 1988) (pension benefits must be paid to employee fired for financial irregularities committed in his administration of the plan; there is no fraud exception to ERISA's anti-alienation provision).
In Guidry, supra, a union official pleaded guilty to embezzlement of funds from the union. The union subsequently initiated a civil action which resulted in a $275,000.00 judgment against the official. 493 U.S. at 367, 110 S.Ct. at 682, 107 L.Ed.2d at 789. This judgment was sought to be enforced by imposition of a constructive trust on the official's pension benefits until such time as the judgment was satisfied. Id. at 368-69, 110 S.Ct. at 683, 107 L.Ed.2d at 790-91. The Supreme Court held that a constructive trust was not different from garnishment and that both were barred by the anti-alienation provision of ERISA. Id. at 371-72, 110 S.Ct. at 685, 107 L.Ed.2d at 792. In finding that neither other federal statutes nor general principles of equity could overcome ERISA's ban on alienation of pension benefits, the Court explained:
Nor do we think it appropriate to approve any generalized equitable exception  either for employee malfeasance or for criminal misconduct  to ERISA's prohibition on the assignment or alienation of pension benefits. Section 206(d) reflects a considered congressional policy choice, a decision to safeguard a stream of income for pensioners (and their dependents, who may be, and perhaps usually are, blameless), even if that decision prevents others from securing relief for the wrongs done them. If exceptions to this policy are to be made, it is for Congress to undertake that task.

*282 As a general matter, courts should be loath to announce equitable exceptions to legislative requirements or prohibitions that are unqualified by the statutory text. The creation of such exceptions, in our view, would be especially problematic in the context of an anti garnishment provision. Such a provision acts, by definition, to hinder the collection of a lawful debt. A restriction on garnishment therefore can be defended only on the view that the effectuation of certain broad social policies sometimes takes precedence over the desire to do equity between particular parties. It makes little sense to adopt such a policy and then to refuse enforcement whenever enforcement appears inequitable. A court attempting to carve out an exception that would not swallow the rule would be forced to determine whether application of the rule in particular circumstances would be "especially" inequitable. The impracticability of defining such a standard reinforces our conclusion that the identification of any exception should be left to Congress.
Understandably, there may be a natural distaste for the result we reach here. The statute, however, is clear. In addition, as has been noted above, the malefactor often is not the only beneficiary of the pension. [Guidry v. Sheet Metal Workers National Pension Fund, supra, 493 U.S. at 376-77, 110 S.Ct. at 687-88, 107 L.Ed.2d at 795 (footnote omitted)].
The ERISA cases since Guidry have disapproved applications of a fraud exception in the context of a civil judgment, see Herberger v. Shanbaum, 897 F.2d 801, 804 (5th Cir.1990), cert. denied, ___ U.S. ___, 111 S.Ct. 60, 112 L.Ed.2d 35 (1990), and found that health and welfare benefits (as distinguished from pension benefits, which are treated differently in ERISA with respect to alienability and assignability), may be alienated or assigned. See United States v. Teamsters, 753 F. Supp. 1181, 1184 (S.D.N.Y. 1990), aff'd in part, rev'd in part (on other grounds), 899 F.2d 143 (2d Cir.1990); FMC Corp. v. Holliday, 498 U.S. 52, ___, 111 S.Ct. 403, 408, 112 L.Ed.2d 356, 369 (1990) (ERISA preempts Pennsylvania statute which barred insurer's lien against tort recovery for benefits paid to its insured).
In terms of the issue presented here, Pulasty points to the fact that Guidry specifically refused to find a "generalized equitable exception  either for employee malfeasance or for criminal misconduct  to ERISA's prohibition on the assignment or alienation of pension benefits." 493 U.S. at 376, 110 S.Ct. at 687, 107 L.Ed.2d at 795. He reads this language as ending our inquiry. We disagree. The criminal misconduct element of *283 Guidry was mere happenstance. What was at issue there was a civil suit by a victim which resulted in a judgment which the victim sought to enforce through the debtor's pension. This situation is exactly what ERISA was intended to prohibit and is wholly distinct from what is before us: restitution ordered as part of a criminal penalty which resulted from a plea bargain in which Pulasty gained the benefit of his agreement with the prosecutor.
Pulasty also invokes the Second Circuit's opinion in Ellis which declared that ERISA did not "except from its breadth the state laws of restitution and constructive trusts." 786 F.2d at 469. Like Guidry, this enunciation derives its meaning from the civil context in which it arose. Ellis involved an application for a constructive trust in a civil fraud case and Guidry an ordinary civil judgment which the creditor sought to satisfy out of the miscreants' pension. That the debtor in each of these cases was the subject of a successful separate criminal action was probably the genesis of the Court's passing reference in Guidry to "criminal misconduct." It is, however, irrelevant to the question of whether those decisions were meant to apply the anti-alienation clause to criminal restitution. We think they were not and that, in fact, the entirely distinct framework of criminal restitution directs an opposite conclusion.
Unlike a civil judgment which is intended as a vehicle to make the victim whole, the purpose of restitution is to strip a defendant of pecuniary gain from the crime where that gain is directly related to the crime itself and the defendant has the ability (though not necessarily the immediate means) to pay. State v. Topping, 248 N.J. Super. 86, 89-90, 590 A.2d 252 (App.Div. 1991); State v. Townsend, 222 N.J. Super. 273, 279, 536 A.2d 782 (App.Div. 1988); State v. Paladino, 203 N.J. Super. 537, 547, 497 A.2d 562 (App.Div. 1985); N.J.S.A. 2C:44-2a. Like punishment, rehabilitation and deterrence, the other aims of criminal restitution, disgorgement of the ill-gotten gain is a far reaching goal quite distinct from the traditional compensatory *284 rationale of the civil law. See In re Parole Application of Trantino, 89 N.J. 347, 371-76, 446 A.2d 104 (1982); State v. Lavelle, 54 N.J. 315, 255 A.2d 223 (1969). See also Note, Victim Restitution In The Criminal Process: A Procedural Analysis, 97 Harv.L.Rev. 931, 946 (1984). In short, the very different ends served by the criminal justice system and the civil system substantially distinguish criminal restitution from the civil judgment collection mechanisms which are the aim of ERISA's anti-alienation provision. The goal of ERISA is to protect the "spendthrift" pension beneficiary from squandering his pension by outspending his benefits, and suffering assignment of those benefits to creditors. It is not to eliminate a legitimate sentencing tool of the state criminal court. Moreover, given the nature of a restitution determination under N.J.S.A. 2C:44-2 (that it must be in an amount defendant can reasonably afford, State v. Rhoda, 206 N.J. Super. 584, 591-92, 503 A.2d 364 (App.Div.), certif. denied, 105 N.J. 524, 523 A.2d 167 (1986)); State v. Paladino, supra, 203 N.J. Super. at 547, 497 A.2d 562, the use of pension benefits to satisfy restitution will not result in the pauperization of defendant or his dependents and thus will not offend the salutary principles of ERISA.
We note further that 29 U.S.C.A. § 1144(b)(4) exempts "generally applicable criminal law[s] of a [s]tate" from ERISA's broad preemption provisions. This statute has been interpreted fairly frequently. Most recently in State v. Burten, 219 N.J. Super. 156, 530 A.2d 30 (App.Div. 1987), we affirmed the Law Division opinion, 219 N.J. Super. 339, 530 A.2d 363 (Law Div. 1986), which held that a criminal law which "relates to" an employee benefit plan is preempted. The Law Division explained:
In order to avoid being preempted, a state law, in addition to being an exercise of traditional police powers, must also affect the plan "in too tenuous, remote or peripheral a manner to warrant a finding that the law `relates to' the plan." The New Jersey Statute at issue is not an indirect attempt to regulate employee benefits but directly seeks to impose penal sanctions for failure by the employer to contribute to an employee benefit plan that is established as a result of collective bargaining. [State v. Burten, supra, 219 N.J. Super. at 347, 530 A.2d *285 363 (quoting Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 524, 101 S.Ct. 1895, 1907, 68 L.Ed.2d 402, 417 (1981))].
We here reaffirm the distinction made in Burten and thus join the majority of jurisdictions which have read the preemption exception in section 1144(b)(4) to mean that a criminal law is preempted where it "relates to" an employee benefit plan, while general criminal laws, such as those which punish larceny and theft, survive ERISA even where the subject of the theft is a pension plan or provider. Commonwealth v. Federico, 383 Mass. 485, 419 N.E.2d 1374, 1378 (1981); Sforza v. Kenco Constructional Contracting Inc., 674 F. Supp. 1493, 1494-96 (D.Conn. 1986); Cairy v. Superior Court, 192 Cal. App.3d 840, 845, 237 Cal. Rptr. 715, 718 (1987). In our view, the restitution provision of N.J.S.A. 2C:44-2 is a generally applicable criminal law and does not "relate to" an employee benefit plan; thus, it is not preempted by ERISA. Accordingly, the trial judge was free, within the constraints of N.J.S.A. 2C:44-2, to look to Pulasty's pensions for satisfaction of the restitution order.
Our ruling here makes it unnecessary for us to address Pulasty's alternate claim as to his Social Security benefits. The judge's original intention was that Pulasty pay restitution out of his pension; a scheme which we have held conforms with ERISA. Under the circumstances, there is no need for us to consider the anti-alienation provision of the Social Security Act, 42 U.S.C.A. § 407(a) which is more restrictive and thus presents a more complicated issue than the parallel ERISA clause.
Pulasty's remaining arguments do not warrant extended discussion. Suffice it to say that state and federal income limitations enacted to regulate the relationship between civil judgment creditors and debtors have no more application to the entirely distinct field of criminal restitution than does the ERISA anti-alienation provision. Kornit v. Bd. of Educ. of Plainview-Old Bethpage Central School Dist., 534 F. Supp. 94, 95 (E.D.N.Y. 1981), aff'd o.b., 677 F.2d 13 (2d Cir.1982). In our view, the trial judge correctly found that state and federal *286 restraints on garnishment "do not limit the criminal restitution authority of this court or the collection of that restitution." Pulasty has failed to demonstrate any error in this conclusion. In light of these rulings, his claimed entitlement to a refund and to counsel fees must fail.
Affirmed.
NOTES
[1] We consolidate these appeals for disposition.