[No. B025010. Second Dist., Div. Seven. June 15, 1987.]

TERRY THOMAS CAIRY, Petitioner, v.
THE SUPERIOR COURT FOR THE COUNTY OF LOS
ANGELES, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Morgan, Cheroske & Reamer and John J. Cheroske for Petitioner.

No appearance for Respondent.

Ira Reiner, District Attorney, Donald J. Kaplan, Maurice H. Oppenheim and Joel P. Hoffman, Deputy District Attorneys, for Real Party in Interest.

## OPINION

**JOHNSON, J.**—Terry Cairy is charged with a violation of Labor Code section 227 which makes it a crime to willfully, and with intent to defraud, fail to make payments to an employee pension fund as required by the terms of a collective bargaining agreement.[1]

Cairy demurred to the information on the ground section 227 is preempted by the Federal Employee Retirement Income Security Act (ERISA) (29 U.S.C. § 1001 et seq.). Cairy relies on 29 United States Code section 1144(a) which provides ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan..." The People contend section 227 does not fall within the ERISA preemption provision because it is not a law "which purports to regulate, directly or indirectly, the terms and conditions of employee benefit plans...." (29 U.S.C. § 1144(c)(2).) Furthermore, the People contend, even if section 227 would otherwise be preempted, it falls within the savings clause which excepts from preemption "any generally applicable criminal law of a State." (29 U.S.C. § 1144(b)(4).)

After Cairy's demurrer was overruled, we issued an alternative writ of mandate and a stay of proceedings in order to consider the preemption question. We have concluded ERISA preempts Labor Code section 227, precluding Cairy's prosecution under that section.

■ The People first contend section 227 is not a law "which purports to regulate, directly or indirectly, the terms and conditions" of a pension plan. (29 U.S.C. § 1144(c)(2).) They contend section 227 does not regulate terms and conditions because it does not come into play until after the plan has been adopted and it does not attempt to prescribe what terms and conditions the plan must contain.

We cannot accept such a narrow interpretation of the ERISA preemption provision. In *Pacific Airmotive Corp.* v. *First Interstate Bank* (1986) 178 Cal.App.3d 1130, 1136 [224 Cal.Rptr. 233], we reviewed the legislative history of the ERISA preemption provision and the Supreme Court decisions construing it. We concluded, "It is now settled section 1144 does not preempt only state laws dealing with subject matters specifically covered by

---

[1] Labor Code section 227 provides in relevant part: "Whenever an employer has agreed with any employee to make payments to a health or welfare fund, pension fund or vacation plan, or other such plan for the benefit of the employees, or a negotiated industrial promotion fund, or has entered into a collective bargaining agreement providing for such payments, it shall be unlawful for such an employer willfully or with intent to defraud to fail to make the payments required by the terms of any such agreement."

ERISA. It applies to any state law which regulates directly or indirectly the terms and conditions of employer benefit plans." For example, a state law prohibiting the offset of workers' compensation benefits against retirement pension benefits was held to be preempted by ERISA in *Alessi* v. *Raybestos-Manhattan, Inc.* (1981) 451 U.S. 504 [68 L.Ed.2d 402, 101 S.Ct. 1895]. The court found the state law related to employee benefit plans, albeit indirectly, because it eliminated a method for calculating pension benefits permitted under ERISA. (*Id.,* at pp. 524-525 [68 L.Ed.2d at pp. 417-418].) The Supreme Court again construed the ERISA preemption provision in *Pilot Life Insurance Co.* v. *Dedeaux* (1987) 481 U.S. 41 [95 L.Ed.2d 39, 107 S.Ct. 1549]. The court held state common law causes of action for damages for improper processing of a claim for benefits under an employee benefit plan "relate to" an employee benefit plan and therefore fall under ERISA's express preemption clause. The court stressed the preemption provision was to be given a "broad common-sense meaning." (*Id.,* at p. __ [95 L.Ed.2d at p. 48, 107 S.Ct. at p. 1553].)

As both *Alessi* and *Pilot Life* demonstrate, the preemption provision is not limited to state laws that come into play before the plan is adopted or that attempt to prescribe the terms and conditions of the plan. Both cases involved the application of state laws to *existing* employee benefit plans. The state laws in *Pilot Life* made no attempt to dictate the provisions of an employee benefit plan. Rather they were being used by the plaintiff in an attempt to enforce the terms and conditions of the plan.

Section 227 "regulates" the terms and conditions of employee benefit plans to the common sense meaning of that word. "Regulate" means "to control or direct according to a rule." (American Heritage Dict. (1976) p. 1096.) It is axiomatic, therefore, the power to regulate includes the power to enforce. (See, e.g., *Pac. Legal Found.* v. *State Energy Resources, etc.* (9th Cir. 1981) 659 F.2d 903, 926.) Here the state is attempting directly to regulate the terms and conditions of a pension plan by using its criminal law to obtain compliance with those terms and conditions (i.e., to "control or direct" an employer's behavior in relation to terms and conditions of the pension plan). Thus, section 227 is preempted by ERISA unless it falls within the exception for "generally applicable" criminal laws of the state.

The majority of courts construing 29 United States Code section 1144(b)(4) have held that "generally applicable" criminal laws are laws that are intended to apply to conduct generally, such as laws against larceny and embezzlement, and that laws which impose criminal sanctions for failure to make contributions to an employee benefit plan, such as Labor Code section 227, are not "generally applicable" criminal laws of a state. (*Sforza* v. *Kenco Constructional Contracting, Inc.* (D.Conn. 1986) 629 F.Supp. 489; *Tr., Sht.*

*Met. Wkrs. Wel. Fund* v. *Aberdeen BSM Wkrs.* (E.D.N.Y. 1983) 559 F.Supp. 561; *Baker* v. *Caravan Moving Corp.* (N.D.Ill. 1983) 561 F.Supp. 337; *Blue Cross* v. *Peacock's Apothecary, Inc.* (N.D.Ala. 1983) 567 F.Supp. 1258; *Commonwealth* v. *Federico* (1981) 383 Mass. 485 [419 N.E.2d 1374]; contra, *Goldstein* v. *Mangano* (1978) 99 Misc.2d 523 [417 N.Y.S.2d 368]; *Sasso* v. *Vachris* (1982) 116 Misc.2d 797 [456 N.Y.S.2d 629]; *Nat. Metalcrafters, a Div. of Keystone* v. *McNeil* (N.D.Ill. 1985) 602 F.Supp. 232.)

The minority view expressed in *Goldstein, Sasso,* and *Nat. Metal Crafters, supra,* is that a law is of general applicability if it extends to the entire state and embraces all persons or things of a particular class. (*Goldstein, supra,* 417 N.Y.S.2d at p. 374.) As we explain below, this definition embraces every state criminal law and nullifies the ERISA preemption provision insofar as criminal laws are concerned.

We agree with the majority view that Congress intended to preempt criminal laws directed specifically at employee benefit plans. This conclusion is consistent with the language of ERISA, its legislative history, and its construction by the United States Supreme Court.

The sweeping language of 29 United States Code section 1144(a) preempting "any and all State laws" which "relate to" any employee benefit plan would have precluded the state from prosecuting an employer who steals money from an employee benefit plan whether the employer was prosecuted under the state's general theft statute or a specific statute aimed at thefts from pension plans. (*Commonwealth* v. *Federico, supra,* 419 N.E.2d at p. 1378.) If both types of laws are exempted from the preemption provision then the phrase "generally applicable" has no meaning. The exception to preemption for generally applicable criminal laws becomes necessary only if there is a distinction between such laws and laws specifically designed to affect employee benefit plans. Every criminal law, if it is constitutional, is "general" in the sense that it applies to some class of circumstances rather than to specific acts of a specific individual. (*Tr., Sht. Met. Wkrs. Wel. Fund* v. *Aberdeen BSM Wkrs., supra,* 559 F.Supp. at p. 563.) We cannot attribute to Congress the purpose either to except from preemption all the criminal laws of the states or to preempt only bills of attainder.[2]

The legislative history is slim on the question of what constitutes a generally applicable criminal law for purposes of 29 United States Code section

---

[2] The People suggest a state criminal law which applies to only one category of employers, e.g., pharmacists, would be an example of a criminal law *not* "generally applicable." (See *Blue Cross* v. *Peacock's Apothecary, Inc., supra,* 567 F.Supp. at p. 1276.) But, it could be argued just as well such a law *is* a law of general applicability because it applies to all pharmacists throughout the state.

1144(b)(4). However, the remarks of Senator Javits, a conferee on the ERISA legislation, are worth noting. He concluded, "in view of Federal preemption, State laws ... imposing criminal penalties on failure to contribute—unless a criminal statute of general application ... will be superseded." (120 Cong. Rec. 15751 (daily ed. Aug. 22, 1974).) The view expressed by Senator Javits is consistent with the general view of preemption expressed by the House and Senate sponsors of ERISA who emphasized both the breadth and importance of the preemption provisions. "Representative Dent described the 'reservation to Federal authority the sole power to regulate the field of employee benefit plans' as ERISA's 'crowning achievement.' 120 Cong. Rec. 29197 (1974). Senator Williams said: [¶] 'It should be stressed that with the narrow exceptions specified in the bill, the substantive and enforcement provisions of the conference substitute are intended to preempt the field for Federal regulations, thus eliminating the threat of conflicting or inconsistent State and local regulation of employee benefit plans. This principle is intended to apply in its broadest sense to all actions of State or local governments, or any instrumentality thereof, which have the force or effect of law.' *Id.* at 29933." (Quoted in *Pilot Life, supra,* 481 U.S. at p. __ [95 L.Ed.2d at p. 47, 107 S.Ct. at p. 1552].)

The United States Supreme Court has not construed the term "generally applicable" criminal law as used in section 1144(b)(4). However, the Court has recognized on several occasions "that the express pre-emption provisions of ERISA are deliberately expansive, and designed to 'establish pension plan regulation as exclusively a federal concern.' " (*Pilot Life, supra,* 481 U.S. at p. __ [95 L.Ed.2d at p. 46, 107 S.Ct. at p. 1552]; see also *Alessi* v. *Raybestos-Manhattan, Inc., supra,* 451 U.S. at p. 523 [68 L.Ed.2d at pp. 416-417]; *Shaw* v. *Delta Air Lines, Inc.* (1983) 463 U.S. 85, 98 [77 L.Ed.2d 490, 501-502, 103 S.Ct. 2890].) We doubt the court would strain to give section 1144(b)(4) the all-encompassing interpretation urged by the People in the case at bar.

Our decision does not mean Mr. Cairy is immune from prosecution under California law for his alleged actions in this case. As the People point out, he may be subject to prosecution under California's general theft statute, Penal Code section 484, or some other generally applicable criminal laws of the state. At this point it would be improper for us to express any views on the propriety of some further prosecution.

### DISPOSITION

The petition is granted. Let a peremptory writ of mandate issue directing the Los Angeles County Superior Court to vacate its order of December 5, 1986, overruling petitioner's demurrer to the information in case number

A781737, People of the State of California v. Terry Thomas Cairy, and therafter make a new and different order sustaining such demurrer. The alternative writ is discharged.

Lillie, P. J., and Thompson, J., concurred.

The petition of real party in interest for review by the Supreme Court was denied September 23, 1987.