A00A2510. PROJECT CONTROL SERVICES, INC. v. REYNOLDS et al.
(545 SE2d 593)

MIKELL, Judge.

Plaintiff Project Control Services, Inc. ("Project Control") is a small business that provides professional services, such as scheduling and cost budgeting, for complex projects. The five defendants[1] are current or former employees of Westinghouse Savannah River Company ("Westinghouse"). Project Control filed this action in the Superior Court of Columbia County, and the amended complaint alleges four counts: (1) violations of the Georgia Public Accountancy Act; (2) violations of the South Carolina Accountancy Act; (3) interference with economic relationships; and (4) fraud, misrepresentation, and false pretenses. The court granted the defendants' motion to dismiss. This appeal followed. We affirm the dismissal.

Construed most favorably to Project Control as the nonmoving party, the pleadings demonstrate that Westinghouse contracted with the U. S. Department of Energy ("DOE") to manage and operate the

---

[1] Aubrey Reynolds, Mark Osborn, Lee Burkhart, J. G. Long, and Abbey Evans.

DOE Savannah River Site facility in South Carolina. The prime contract between Westinghouse and the DOE provided that Westinghouse would perform or have performed audits of the accounts and records of subcontractors with cost reimbursable elements in their prices.

Project Control entered into three subcontracts with Westinghouse for work on the Savannah River Site. Each subcontract provided for the inspection and audit of Project Control's accounts and records by Westinghouse and the DOE. The subcontracts also contained forum selection clauses requiring that any disputes be litigated in South Carolina and choice of law provisions stating that federal law would control, or, if there was no applicable federal law, that South Carolina law would apply.

Project Control requested that the Defense Contract Audit Agency ("DCAA"), the governmental entity which performs audits for the DOE, perform the required audit; however, defendant Abbey Evans, an employee of Westinghouse, declined to refer the audit to the DCAA and directed Project Control to permit the audit by Westinghouse employees. The defendants participated in the audit of Project Control's records as employees of Westinghouse.

During the audit, a number of cost elements were questioned. Project Control did not supply documentation to resolve the questioned costs to the satisfaction of the auditors. The attempted audit was not completed, and the three subcontracts expired. After the unfinished audit, Project Control discovered that none of the named defendants were registered, certified, or licensed as public accountants in Georgia or any other state. As a result, Project Control believed that the audit was illegally performed and alleged that it incurred damages including loss of good will, the costs associated with its participation in the audit, and lost profits resulting from potential contracts for which Project Control could not compete due to the ongoing audit.

Project Control first filed a lawsuit against Westinghouse in federal district court in Georgia, alleging breach of contract, breach of implied duty of good faith and fair dealing, and interference with business relationships; the suit was transferred to federal district court in South Carolina. Subsequently, Project Control filed the present action in superior court against the individual defendants. The federal jury in South Carolina returned a verdict in favor of Westinghouse during the pendency of this appeal.[2]

---

[2] The district court ruled that the Westinghouse auditors were not required to be licensed as a matter of law; therefore, the jury did not consider that issue. The jury found that Westinghouse was not liable to Project Control on its claims of breach of implied duty of good faith and fair dealing, intentional interference with economic relations, interference

1. On appeal, Project Control first argues that the trial court erred in dismissing the action based on its conclusion that Project Control could not establish a cause of action under the Georgia Public Accountancy Act based on the conduct alleged in the complaint. We disagree.

Our review of the grant of a motion to dismiss is de novo. A motion to dismiss may be granted only where a plaintiff would not be entitled to relief under any set of facts that could be proven in support of its claim. *Mattox v. Yellow Freight Systems*, 243 Ga. App. 894 (534 SE2d 561) (2000). Under this standard, we will assume, based on Project Control's complaint, that the defendants were not licensed public accountants when they performed the audit. See *Cellular One v. Emanuel County*, 227 Ga. App. 197, 198 (489 SE2d 50) (1997). However, our review of the relevant statutes demonstrates that Project Control cannot maintain an action against these defendants.

The practice of public accountancy is regulated by the Georgia Public Accountancy Act of 1977 (the "Act"), OCGA § 43-3-1 et seq. Under the Act, the State Board of Accountancy (the "Board") is granted the authority to promulgate rules and regulations governing the practice of public accountancy. OCGA §§ 43-3-3; 43-3-5 (a). The Act requires that a public accountant be registered and hold a permit. OCGA § 43-3-35. However, it also specifies that certain practices are excepted from its requirements. OCGA § 43-3-36 (b) provides in pertinent part that:

> Nothing contained in this chapter shall prohibit any person from offering to perform or performing for the public, for compensation, any of the following services: . . . (4) Internal verification and analysis of books or accounts of original entry; (5) The preparation of unaudited financial statements, schedules, or reports; (6) The devising and installing of systems or methods of bookkeeping, internal controls of financial data, or the recording of financial data. . . .

Significantly, Rule 20-2-.11 of the Rules & Regulations of the State of Georgia defines the practice of public accountancy as follows:

> "Practice of or practicing public accounting" shall be deemed and construed to mean offering to perform or performing for a client one or more types of services involving the use of accounting or auditing skills, or one or more types of management advisory or consulting services, or the preparation of tax returns or the furnishing of advice on tax matters,

with prospective contractual relationships, and breach of subcontracts.

while holding oneself out in such manner as to state or imply that one is a licensee.

We conclude that the conduct alleged in the complaint does not constitute the practice of public accountancy as contemplated by the Act. The Supreme Court recognized in *Mayor &c. of Savannah v. Canady*, 255 Ga. 23, 24 (334 SE2d 693) (1985), that the Act itself does not expressly define the practice of public accounting. In that case, the Court held that a licensed certified public accountant ("CPA") who was employed by a firm of CPAs and listed in the telephone directory as a CPA was engaged in the practice of public accounting. Conversely, we have held that a privately employed accountant was not subject to statutory licensing requirements. *Stephens v. Parrino & Ware*, 138 Ga. App. 634, 636 (5) (226 SE2d 809) (1976). The defendants in the case sub judice performed the audit as a matter of private agreement pursuant to the subcontracts between Project Control and Westinghouse. Project Control does not allege that the defendants held themselves out as licensed public accountants, or that they performed accounting services for clients. Rather, acting at all times as employees of Westinghouse, the defendants merely verified and analyzed Project Control's books and accounts for the benefit of Westinghouse. Therefore, their conduct as alleged in the complaint did not violate the Act.

Based on this conclusion, it is not necessary for us to determine whether the Act provides a private right of action to recover damages for its violation. We recognize that such a determination would be an issue of first impression for this Court; however, we do not reach it because it is not necessary to the disposition of this case.

2. Project Control also argues that it may maintain a cause of action under a similar statute[3] in South Carolina that governs the practice of public accountancy. Because a portion of the audit was performed in South Carolina, Project Control has alleged violations of that statute as well. Again, we find no error in the court's dismissal of the complaint.

Like the Georgia Public Accountancy Act, the South Carolina statutes establish licensing requirements for public accountants. S.C. Code Ann. §§ 40-2-170; 40-2-200; 40-2-550. They prohibit unlicensed persons from holding themselves out as public accountants. S.C. Code Ann. § 40-2-50. Furthermore, like the Georgia Act, the South Carolina statutes exempt certain internal examinations from regulation, S.C. Code Ann. §§ 40-2-50 (A), (C), (D); 40-2-530 (6), and vest enforcement power in a board of accountancy. S.C. Code Ann. §§ 40-2-

---

[3] S.C. Code Ann. § 40-2-50 et seq.

70; 40-2-140; 40-2-310; 40-2-350.

As we concluded in Division 1, the conduct alleged in the complaint does not constitute the practice of public accountancy. Accordingly, the trial court properly dismissed the counts of the complaint alleging violations of the South Carolina statute as well.

3. Next, Project Control argues that the trial court erred in holding that it could not maintain a cause of action under OCGA § 51-1-6. This argument has no merit.

That Code section provides:

> When the law requires a person to perform an act for the benefit of another or to refrain from doing an act which may injure another, although no cause of action is given in express terms, the injured party may recover for the breach of such legal duty if he suffers damage thereby.

"[OCGA § 51-1-6] does not create a cause of action, of course; it simply authorizes the recovery of damages for a breach of a legal duty." *City of Buford v. Ward*, 212 Ga. App. 752, 755 (3) (443 SE2d 279) (1994). We conclude that the trial court properly dismissed Project Control's OCGA § 51-1-6 claim because the defendants did not owe Project Control a legal duty.

Project Control argues that the defendants' performance of the audit authorized a private right of action under OCGA § 51-1-6, because their alleged violation of the Georgia Public Accountancy Act constituted the breach of a legal duty owed to Project Control. As a preliminary matter, we find that the defendants' alleged conduct was not the practice of public accountancy and, thus, did not violate the Act, as we held in Division 1.

However, Project Control further contends that the defendants were liable under OCGA § 51-1-6, even in the absence of a violation of the Act, because they breached the legal duty they owed to Project Control as a result of their roles as auditors. We disagree and find that the defendants did not owe Project Control a legal duty. The audit was performed by the individual defendants during the course of their employment with Westinghouse and according to the subcontracts between Project Control and Westinghouse. Thus, Project Control was not a client of the defendants, and their performance of the audit did not establish an independent legal duty. Compare *Badische Corp. v. Caylor*, 257 Ga. 131, 133 (356 SE2d 198) (1987) (holding that professional liability for negligence of public accounting firm extends to limited class of persons who the public accountants were actually aware would rely on prepared financial statements). Any legal duty owed to Project Control would be the result of its subcontracts with Westinghouse, and it has already unsuccessfully sued Westinghouse

in a separate action. Accordingly, the trial court properly dismissed the complaint on this ground.

4. Project Control next assigns error to the court's dismissal of its claim of interference with economic relationships. It argues that the defendants induced Westinghouse and others to sever their relationships with Project Control in violation of OCGA § 51-12-30.

We conclude, however, that the trial court properly dismissed this claim. First, OCGA § 51-12-30, cited by Project Control in its appellate brief, concerns joint and several liability of joint tortfeasors and does not establish a cause of action for interference with economic relationships.

Furthermore, the defendants' alleged conduct does not support Project Control's claim of interference with economic relations.

> To establish a cause of action for tortious interference with existing and prospective contractual relations, a claimant must show that the defendant (1) acted improperly and without privilege, (2) purposely and with malice and intent to injure, (3) induced a third party or parties not to enter into or continue a business relationship with the plaintiff, and (4) for which the plaintiff suffered some financial injury.

(Citation omitted.) *Green v. Johnston Realty*, 212 Ga. App. 656, 659-660 (4) (442 SE2d 843) (1994). Significantly, Project Control failed to allege improper or malicious conduct. Accordingly, the facts alleged by Project Control cannot support a claim of interference with economic relationships. Id.

5. Finally, Project Control argues that the court erred in dismissing its claims for fraud, misrepresentation, and false pretenses. Again, we disagree and affirm the dismissal.

In its amended complaint, Project Control alleges that defendants Aubrey Reynolds, Mark Osborn, Lee Burkhart, and J. G. Long represented themselves as being "qualified, competent, authorized, and adequately and properly trained to perform an audit of Project Control's financial records, information, and costs." Project Control contends that this representation was false, because the defendants were not licensed public accountants. However, we do not find that the representation as alleged was false, as Project Control does not contend that the defendants represented that they were licensed public accountants. Thus, Project Control has failed to allege any basis for its claims for fraud, misrepresentation, and false pretenses. See OCGA § 51-6-1.

*Judgment affirmed. Pope, P. J., and Miller, J., concur.*

DECIDED FEBRUARY 7, 2001.

*Smith, Currie & Hancock, Karl F. Dix, Deborah R. Murphey, Dorsey R. Carson, Jr.*, for appellant.

*Burnside, Wall, Daniel, Ellison & Revell, Harry D. Revell*, for appellees.