## A02A0805. LEWIS et al. v. DEPARTMENT OF HUMAN RESOURCES.
### (567 SE2d 65)

BLACKBURN, Chief Judge.

Appellants, Carmen L. Lewis, individually and as administrator of the estate of Marvin R. Gentle, and Jane Collins, Gentle's next of kin, appeal the grant of the Georgia Department of Human Resources' (DHR) motion to dismiss, contending that DHR is not protected from immunity under the Georgia Tort Claims Act (GTCA). We affirm.

Gentle, a blind and retarded man, was a resident of the Macedo-

---

[17] See generally *OMAC*, supra.

[18] See generally *Glaza v. Morgan*, 248 Ga. App. 623, 624 (548 SE2d 389) (2001).

nia Road Personal Care Home (MRPCH), a private institution. On February 6, 1999, he sustained second and third degree burns as a result of being scalded in his bath. It is undisputed that MRPCH did not comply with Chapter 290-5-35-.10 (13) (a) of DHR's Rules and Regulations for Personal Care Homes. That regulation provides, in pertinent part: "Heated water provided for [a] resident's use shall not exceed 110 degrees F. at the hot water fixture and a water temperature monitor shall be installed at the hot water fixture."

Gentle was hospitalized and received treatment and rehabilitation, including skin grafts. Upon release from the hospital, he returned to MRPCH, but a short time later, the extent of his burns made it necessary for him to return to the hospital for additional care and treatment. Released from the hospital a second time, Gentle was placed in a nursing home, where care for his burns and rehabilitation continued. On November 28, 1999, Gentle was taken to the emergency room, where he died on the same day. Appellants contend that Gentle died as a result of the February 6, 1999 scalding incident, and for the purpose of reviewing the ruling on the motion to dismiss, we will assume such fact to be true. It is undisputed that DHR made at least four inspections of MRPCH over a period of seven years before Gentle's injury and, on each occasion, found that MRPCH was in violation of the subject regulation, but took no enforcement action.

Appellants filed the underlying action against DHR for negligence in failing to enforce Chapter 290-5-35-.10 (13) (a) of the department's Rules and Regulations for Personal Care Homes, when, for years, it had actual knowledge of the safety hazard that the violation created. DHR filed a motion to dismiss for lack of subject matter jurisdiction based on sovereign immunity, arguing that the action was barred by the inspection and licensing exceptions to state liability in the GTCA, set forth, respectively, in OCGA § 50-21-24 (8) and (9).

We note that the legislative scheme utilized in adopting the GTCA provides a general waiver of sovereign immunity and provides state liability for the torts of state officers and employees for acts within the scope of their official duties or employment in the same manner as a private individual or entity would be liable under like circumstances. See OCGA § 50-21-23 (a). This liability is limited by certain exceptions to the general waiver of sovereign immunity which are outlined in OCGA § 50-21-24. See *Dept. of Transp. v. Bishop*.[1]

The trial court granted DHR's motion to dismiss, resulting in this appeal. "Our review of the grant of a motion to dismiss is de novo. A motion to dismiss may be granted only where a plaintiff

---

[1] *Dept. of Transp. v. Bishop*, 216 Ga. App. 57, 58 (1) (453 SE2d 478) (1995).

would not be entitled to relief under any set of facts that could be proven in support of its claim." *Project Control Svcs. v. Reynolds*.[2] See *Colvin v. United States of America*[3] (a court does not have subject matter jurisdiction over an action beyond the limited waiver of sovereign immunity).

On appeal, appellants argue that the statutory exceptions in OCGA § 50-21-24 (8) and (9) are inapplicable in this case. They point out that they are not suing DHR for either failure to inspect or negligence in licensing, but rather for negligence in ignoring an ongoing safety hazard and failing to enforce its own water temperature regulations. They argue further that the duty to enforce the water temperature regulations is a ministerial duty and that DHR is thus subject to suit and liability for damages resulting from its negligent failure to perform that ministerial duty. Appellants rely upon the Georgia Constitution, Art. I, Sec. II, Par. IX (d), which provides, in part, "[e]xcept as specifically provided by the General Assembly in a State Tort Claims Act, all officers and employees of the state or its departments and agencies may be subject to suit and may be liable for injuries and damages caused by the negligent performance of, or *negligent failure to perform, their ministerial functions.*" (Emphasis supplied.)

Appellants ignore essential qualifying language in the above provision, that being "[e]xcept as specifically provided by the General Assembly in a State Tort Claims Act." Ga. Const., Art. I, Sec. II, Par. IX (d). See *Ridley v. Johns*,[4] a case involving "official" rather than "sovereign" immunity, but which is applicable on this narrow issue. The language of the Georgia Constitution provides that any tort claims act which the legislature might adopt would control any waiver of sovereign immunity. Thus, one must look to the language of the GTCA, OCGA § 50-21-20 et seq., to determine the subject law.

"The Legislature enacted the [GTCA], OCGA § 50-21-20 et seq., in order to balance strict application of the doctrine of sovereign immunity against the need for limited exposure of the State treasury to tort liability." *Ga. Ports Auth. v. Harris*.[5] While recognizing "the inherently unfair and inequitable results which occur in the strict application of the traditional doctrine of sovereign immunity," the legislature also realized that "[i]n acting for the public good and in responding to public need, state government must provide a broad range of services and perform a broad range of functions throughout the entire state, regardless of how much exposure to liability may be

---

[2] *Project Control Svcs. v. Reynolds*, 247 Ga. App. 889, 891 (1) (545 SE2d 593) (2001).

[3] *Colvin v. United States of America*, 153 Ga. App. 874, 875 (267 SE2d 297) (1980).

[4] *Ridley v. Johns*, 274 Ga. 241 (552 SE2d 853) (2001).

[5] *Ga. Ports Auth. v. Harris*, 274 Ga. 146, 149 (2) (549 SE2d 95) (2001).

involved." OCGA § 50-21-21 (a). With this in mind, the legislature concluded that "[t]he exposure of the state treasury to tort liability must therefore be limited," and that "[s]tate government should not have the duty to do everything that might be done." Id. Accordingly, the legislature declared it to be "the public policy of this state that the state shall only be liable in tort actions within the limitations of" the Act. Id.

We look first to the GTCA, OCGA § 50-21-23 (a), to determine if a general waiver of sovereign immunity applies to this case. The first limitation on the waiver of the state's sovereign immunity is that it applies only to "torts of state officers and employees . . . acting within the scope of their official duties or employment." Id. This necessarily means that the state is immune from liability if the tort is that of state officers or employees acting outside the scope of their official duties or employment, or if the tort was committed by a third party. Here, the tort alleged is the failure of DHR to enforce its regulations. Any duty to enforce the regulations, under the facts here, is clearly within the scope of DHR's official duties. However, the duty not to heat the water in excess of 100°F was that of a third party, not that of the state. It was the responsibility of MRPCH, not DHR, to comply with Chapter 290-5-35-.10 (13) (a) of the department's Rules and Regulations for Personal Care Homes.

Consideration of the requirement that the act must be that of the state and not of a third party in order for the state to be held liable leads naturally to the conclusion that the state cannot be held liable in this case because its failure to enforce the water temperature regulations was not the proximate cause of Gentle's death.

> The requirement of proximate cause constitutes a limit on legal liability; it is a policy decision that, for a variety of reasons, e.g., intervening act, the defendant's conduct and the plaintiff's injury are too remote for the law to countenance recovery. For this reason, before any negligence, even if proven, can be actionable, that negligence must be the proximate cause of the injuries sued upon. To establish proximate cause, a plaintiff must show a legally attributable causal connection between the defendant's conduct and the alleged injury. Conversely, no matter how negligent a party may be, if his act stands in no causal relation to the injury it is not actionable.

(Citations and punctuation omitted.) *Bacon v. Mayor &c. of Savannah.*[6] In this case, the proximate cause of Gentle's death was his

---

[6] *Bacon v. Mayor &c. of Savannah*, 241 Ga. App. 211, 212-213 (525 SE2d 115) (1999).

being placed into scalding water. Under normal circumstances, any person stepping negligently into scalding water would be responsible for any resulting harm because of the open and obvious risk of scalding water. MRPCH, in assuming the care of Gentle, stood in his place and assumed the responsibility for placing him safely into his bath. It was their responsibility to not place him into a scalding bath. The state, on the other hand, had neither the authority nor the ability to prevent the employees of MRPCH from putting him into the scalding water. Thus, MRPCH's conduct constitutes the intervening proximate cause of Gentle's injuries. As MRPCH placed Gentle into the scalding bath, DHR cannot be held liable for such tortious conduct of nongovernment employees on private property.

Here, DHR is further immune from liability as its conduct falls within exceptions to the waiver of sovereign immunity under the GTCA. Even if a state officer is acting within the scope of his official duties, the state is immune from liability if " 'the alleged tortious act falls within one of the exceptions set forth in OCGA § 50-21-24.' " *Dept. of Transp. v. Bishop*, supra at 58 (1).

Under OCGA § 50-21-24 (8), the state has no liability for losses resulting from "[i]nspection powers or functions, including failure to make an inspection or making an inadequate or negligent inspection of any property *other than property owned by the state* to determine whether the property complies with or violates any law, regulation, code, or ordinance or contains a hazard to health or safety." (Emphasis supplied.) First, even if DHR's act is characterized as a failure to enforce rather than a failure to inspect, DHR is nonetheless shielded from liability by this statute because any duty DHR had involved an " 'inspection power or function.' " *Magueur v. Dept. of Transp.*[7] (holding that DOT's failure to notify county that road contained safety hazards involved an inspection power or function). In addition, the language of the statute clearly provides that the state waives sovereign immunity as to injuries resulting from the exercise of inspection powers or functions only when the facility or property at issue is owned by the state. As MRPCH is a private institution, not state-owned property, sovereign immunity is not waived in this case.

DHR is also immune under OCGA § 50-21-24 (9), the plain language of which provides for state immunity for losses resulting from "[l]icensing powers or functions." The term "licensing powers or functions" clearly includes the power to enforce the regulations governing the license. Further, the various enforcement actions set forth in OCGA § 31-2-6 are to be taken by DHR when it "finds that any applicant or licensee has violated any provisions of [OCGA § 31-2-6 (b)] or

---

[7] *Magueur v. Dept. of Transp.*, 248 Ga. App. 575, 577 (547 SE2d 304) (2001).

laws, rules, regulations, or formal orders related to *the initial or continued licensing* of the agency, facility, institution, or entity." (Emphasis supplied.) OCGA § 31-2-6 (c). Indeed, the state's power to license would be meaningless if not accompanied by the power to enforce the attendant regulations.

We also conclude that the exercise of regulatory enforcement herein involved is a discretionary rather than ministerial function, as enforcement is a natural part of inspection and licensing. Courts in other jurisdictions have held that the power to license or regulate necessarily carries with it the power to enforce. See, e.g., *Brown v. District Court*[8] (holding that if state had only power to license and not also power to enforce, it "would be powerless to effectuate the intent of Congress"); *Hess v. Barton Glen Club*[9] ("[i]n our view, the power to impose a binding rule, by necessity, includes the power to enforce the rule"); *Cairy v. Superior Court*[10] ("[i]t is axiomatic, therefore, the power to regulate includes the power to enforce"); *Commonwealth v. Morash*[11] (same); *Neshaminy Federation of Teachers v. Neshaminy School Dist.*[12] ("[t]he power to regulate conduct, of course, would be illusory absent a concomitant power to enforce rules through the imposition of some form of discipline"); *In the Matter of Baker*[13] ("[o]f what avail is the power to license in the absence of [the] power to prevent one not licensed from practicing as an attorney") (punctuation omitted).

Our review of the enforcement options available to DHR in OCGA § 31-2-6 (c) makes it clear that the exercise of discretion is required in determining the appropriate enforcement procedure, and thus DHR is immune from liability under the GTCA. OCGA § 50-21-24 (2) excepts the state from a waiver of sovereign immunity for losses resulting from "[t]he exercise or performance of or the failure to exercise or perform a discretionary function or duty on the part of a state officer or employee, whether or not the discretion involved is abused." Under this exception, there is no waiver of sovereign immunity even if DHR has abused its discretion in failing to enforce their regulations.

Our Supreme Court has observed, "[i]n determining the scope of the discretionary function exception, we need not consider previous cases involving discretionary versus ministerial decisions because the legislature included in [the] statute the definition of discretion-

[8] *Brown v. District Court &c.*, 238 Mont. 248, 254 (777 P2d 877) (1989).

[9] *Hess v. Barton Glen Club*, 718 A2d 908, 914 (Pa. Commw. 1998).

[10] *Cairy v. Superior Court*, 192 Cal. App.3d 840, 843 (237 Cal. Rptr. 715) (1987).

[11] *Commonwealth v. Morash*, 402 Mass. 287, 295 (522 NE2d 409) (1988).

[12] *Neshaminy Federation of Teachers v. Neshaminy School Dist.*, 501 Pa. 534, 545 (II) (A) (462 A2d 629) (1983).

[13] *In the Matter of Baker*, 8 N.J. 321, 335 (II) (85 A2d 505) (1951).

ary function or duty." *Dept. of Transp. v. Brown.*[14] OCGA § 50-21-22 (2) defines "discretionary function or duty" as "a function or duty requiring a state officer or employee to exercise his or her policy judgment in choosing among alternative courses of action based upon a consideration of social, political, or economic factors." In setting forth this definition, the legislature, though conscious of the need "to limit the state's overall exposure to tort liability[,] . . . enacted a relatively narrow definition of discretionary function as an exception to state liability." *Edwards v. Dept. of Children &c. Svcs.*[15] Thus, "[t]he plain meaning of the statutory exception is that the state employee must exercise a 'policy judgment' in choosing among various alternative actions based on social, political, and economic factors." Id. at 892. In contrast, "[a] ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty." *Howard v. City of Columbus.*[16]

A decision on which of numerous possible actions the department should take in enforcing health regulations entails policy judgments in which alternate courses of action must be weighed in light of competing social, political, and economic factors rather than the simple execution of a specific duty. *Bruton v. Dept. of Human Resources.*[17]

Under OCGA § 31-2-6 (c), DHR may: administer a public reprimand; suspend any license, permit, registration, or commission for a definite or indefinite period in connection with any condition which may be attached to the restoration of said license; prohibit any applicant or licensee from allowing a person who previously was involved in the management or control of any entity which has had its license or application revoked or denied within the past 12 months to be involved in the management or control of such entity; revoke any license; impose a fine for each violation of a law, rule, regulation, or formal order related to the initial or ongoing licensing of any entity; or, limit or restrict any license *as the department deems necessary for the protection of the public,* including, but not limited to, restricting some or all services of or admissions into an entity for a time certain.

In deciding to take any of the actions enumerated in OCGA § 31-2-6 (c) (7), "the department shall consider the seriousness of the violation, including the circumstances, extent, and gravity of the prohibited acts, and the hazard or potential hazard created to the health or safety of the public." Of equal importance is the fact that the statute

---

[14] *Dept. of Transp. v. Brown,* 267 Ga. 6, 7 (1) (471 SE2d 849) (1996).
[15] *Edwards v. Dept. of Children &c. Svcs.,* 271 Ga. 890, 891 (525 SE2d 83) (2000).
[16] *Howard v. City of Columbus,* 239 Ga. App. 399, 414 (2) (b) (521 SE2d 51) (1999).
[17] *Bruton v. Dept. of Human Resources,* 235 Ga. App. 291, 295 (509 SE2d 363) (1998).

does not mandate a "simple, absolute and definite" course of action; the department is not required to take specific actions or follow a set procedure in enforcing the regulations. The range of these enforcement alternatives, the discretion of the department to fashion enforcement actions based on the circumstances and facts of the individual cases, and the direction that health and safety factors be weighed in deciding which enforcement action to take make clear that the nature of DHR's duty in this case was discretionary.

We find support for this conclusion in *Peele v. Dobbs*.[18] In that case, the plaintiffs, after their home was damaged by a chimney fire, sued a county building inspector for negligently approving the construction of the chimney. This Court denied relief. Citing the decision of our Supreme Court in *Hennessy v. Webb*,[19] we said, "In effect, the appellants are alleging that the appellee, acting in his official capacity as building inspector, failed to exercise sound judgment (discretion) in allowing what they alleged to be a hazardous condition to exist. Therefore, the act or failure to act is not ministerial in nature, but is, rather, discretionary." (Punctuation omitted.) *Peele*, supra. Likewise, the appellants in this case claim that DHR failed to exercise discretion in ignoring, and allowing to exist, a hazardous condition. Accordingly, DHR's failure to act is discretionary, rather than ministerial, in nature.

We note that courts in other jurisdictions have held that the enforcement of laws and regulations is a discretionary function. See, e.g., *Trianon Park Condo. Assn. v. City of Hialeah*[20] ("[h]ow a governmental entity, through its officials and employees, exercises its discretionary power to enforce compliance with the laws duly enacted by a governmental body is a matter of governance, for which there never has been a common law duty of care"); *Hurley v. Hudson*[21] (holding that planning board was not liable for failure to enforce town ordinance, since the enforcement of laws "is certainly the kind of discretionary, 'governmental' activity which as a general proposition ought not to lead to tort liability"); *Classen v. State*[22] (finding that administration and enforcement of licensing requirements are discretionary).

*Judgment affirmed. Johnson, P. J., and Miller, J., concur.*

DECIDED JUNE 13, 2002.

*Self, Glaser & Davis, Arthur H. Glaser, Mark B. Bullman*, for appellants.

---

[18] *Peele v. Dobbs*, 196 Ga. App. 684 (396 SE2d 600) (1990).
[19] *Hennessy v. Webb*, 245 Ga. 329 (264 SE2d 878) (1980).
[20] *Trianon Park Condo. Assn. v. City of Hialeah*, 468 S2d 912, 919 (II) (Fla. 1985).
[21] *Hurley v. Hudson*, 112 N.H. 365, 369-370 (296 A2d 905) (1972).
[22] *Classen v. State*, 131 Misc.2d 346, 354-355 (500 NYS2d 460) (1985).

*Thurbert E. Baker, Attorney General, Kathleen M. Pacious, Deputy Attorney General, Loretta L. Pinkston, Senior Assistant Attorney General, Jennifer L. Dalton, Assistant Attorney General, Skelly & Deininger, Richard M. Skelly*, for appellee.