**FOURTH DIVISION**
**DOYLE, P. J.,**
**COOMER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 29, 2019**

# In the Court of Appeals of Georgia

A19A1312. BOARD OF TRUSTEES OF GEORGIA MILITARY
        COLLEGE v. O'DONNELL.

MARKLE, Judge.

Rose O'Donnell was injured after performing a series of physical exercises as punishment for violation of the honor code while a student at Georgia Military College ("the College"). She filed a civil suit for negligence against the Board of Trustees of GMC ("GMC") and individual members of the board and staff, seeking damages arising from the injuries she sustained. The trial court denied GMC's motion to dismiss, as well as its motion for summary judgment. On appeal, GMC argues that the trial court erred in (1) denying its motion to dismiss based on the discretionary function exception to a waiver of sovereign immunity under OCGA § 50-21-24 (2); (2) denying its motion for summary judgment where OCGA § 20-2-1000 (b) provides

for immunity for the acts or omissions of educators resulting from the discipline of a student; and (3) denying its motion for summary judgment where no GMC educator breached a legal duty that proximately caused O'Donnell's injuries. Because O'Donnell's suit is barred by the doctrine of sovereign immunity, we reverse.

"We review de novo a trial court's ruling on a motion to dismiss based on sovereign immunity grounds, which is a matter of law. Factual findings are sustained if there is evidence supporting them, and the burden of proof is on the party seeking the waiver of immunity." (Citation omitted.) *Douglas v. Dept. of Juvenile Justice*, 349 Ga. App. 10 (825 SE2d 395) (2019).

So viewed, the evidence shows that, in October 2013, O'Donnell was a high school junior at the College when she was caught plagiarizing a biology lab report. She admitted to violating the honor code, and was given punishment of ten hours of "bullring," GMC's after school retraining session consisting of a series of physical exercises, to be completed for one hour each day. The bullring was run by Junior Reserve Officers' Training Corps ("JROTC") instructors, and the physical exercises complied with GMC JROTC standard operating procedures ("SOPs") and the army physical readiness training manual ("PRT"). Per the SOPs, the instructors determined which exercises were performed, as well as the duration and number of those

exercises. Students were required to complete the entire hour of bullring in order to receive full credit; if they failed to complete the exercises, they were required to repeat the entire hour.

On her first day of participating in bullring, O'Donnell was required to perform numerous exercises, such as running, pushups, and lunges. She started to struggle during her second run and set of pushups, and, although she knew that she could stop the exercises if she needed to, she chose to proceed so that she would not have to repeat the entire session. O'Donnell struggled through the remainder of the exercises; she cried, was flushed, she was breathing heavily, and she felt pain in her legs, arms, and knees. When one instructor noticed she was breathing heavily and asked if she needed to see the nurse, O'Donnell replied that she was trying to catch her breath.

After bullring, O'Donnell noticed her arms were sore and shaking, and she took a warm bath and placed ice on her arms once she got home that evening. At school the next morning, O'Donnell proceeded to the nurse's office because she could not move her arms. The nurse noted O'Donnell had swelling in her left arm, her right arm was sore, and she had bruising on her knees, and she gave O'Donnell an ice pack. Unable to complete classes for that day, O'Donnell checked out of school and, when

her pain worsened, she sought medical treatment at a local hospital. Ultimately, O'Donnell was diagnosed with rhabdomyolysis, a condition resulting from severe muscle breakdown and the release of proteins into the blood stream, and was admitted to the hospital for ten days.

As a result of her injuries, O'Donnell sued GMC and individual members of the board and staff (collectively, "the defendants") under the Georgia Tort Claims Act ("GTCA"), OCGA § 50-21-20 et seq., alleging state law negligence claims and violation of civil rights.[1] GMC filed its motion for summary judgment, asserting (1) there was no evidence any of its employees breached a duty proximately causing O'Donnell's injuries; and (2) GMC had immunity from O'Donnell's claims under OCGA § 20-2-1000 (b). GMC also filed a motion to dismiss based on the discretionary function exception to the waiver of sovereign immunity under OCGA § 50-21-24 (2).

---

[1] The named defendants removed the case from the Baldwin County Superior Court to the United States District Court for the Middle District of Georgia based on O'Donnell's federal civil rights claim. After the district court dismissed the individually named defendants and the federal civil rights claim against them, it remanded O'Donnell's state law claims against GMC back to superior court.

Following two hearings,[2] the trial court denied the motions to dismiss and for summary judgment,[3] finding that OCGA §§ 20-2-732 and 20-2-1000 did not waive immunity given to educators in connection with student disciplinary action; there was a jury question as to whether the punishment O'Donnell endured was excessive or unduly severe; GMC was not entitled to sovereign immunity under the exception to the GTCA's waiver of immunity under OCGA § 50-21-24 (2); and there was a jury question as to whether GMC breached a duty of care to O'Donnell, and whether that breach was the proximate cause of her injuries. GMC filed an application for interlocutory review, which this Court granted. This appeal followed.

1. GMC argues that the trial court erred in failing to dismiss O'Donnell's negligence claims against it because her claims are barred by sovereign immunity. Specifically, GMC contends that, although the GTCA provides a limited waiver of

_____

[2] The record does not contain a transcript of the first hearing. However, given that the purpose of the hearings was to have argument rather than to admit evidence, the absence of a transcript does not hinder our review. See *League v. Citibank (South Dakota)*, 291 Ga. App. 866, 867-868 (1) (663 SE2d 266) (2008).

[3] The trial court entered an order denying GMC's motion to dismiss, finding it had subject matter jurisdiction for the reasons explained in its order on GMC's motion for summary judgment. The trial court also entered a separate order denying GMC's motion for summary judgment.

immunity to state officers and employees, the conduct complained of here falls within an exception under OCGA § 50-21-24 (2). We agree.

As a preliminary matter, we note the unusual procedural posture of this case. GMC first filed its motion for summary judgment, and subsequently filed a motion to dismiss based on sovereign immunity. Regardless of this procedural posture,

> the applicability of sovereign immunity to claims brought against the State is a *jurisdictional* issue. . . . Therefore, the applicability of sovereign immunity is a threshold determination and, if it does apply, a court lacks jurisdiction over the case and, concomitantly, lacks authority to decide the merits of a claim that is barred.

(Citations and punctuation omitted; emphasis supplied.) *McConnell v. Dept. of Labor*, 302 Ga. 18, 18-19 (805 SE2d 79) (2017). "Any suit against the State barred by sovereign immunity is subject to dismissal pursuant to OCGA § 9-11-12 (b) (1) for lack of subject matter jurisdiction." (Citations omitted.) *Dept. of Public Safety v. Johnson*, 343 Ga. App. 22, 22-23 (806 SE2d 195) (2017). And "[a]s a state institution, GMC is entitled to sovereign immunity except to the extent sovereign immunity has been waived." (Citation and punctuation omitted.) *Ga. Military College v. Santamorena*, 237 Ga. App. 58, 59 (1) (514 SE2d 82) (1999); see also OCGA § 20-

3-541. With this framework in mind, we turn to GMC's argument on sovereign immunity.

The GTCA is "the exclusive remedy for any tort committed by a state officer or employee." OCGA § 50-21-25 (a).

> Under the Georgia Constitution, sovereign immunity extends to the state and all of its departments and agencies. This immunity may be waived only by a legislative act which specifically provides that sovereign immunity is thereby waived and the extent of such waiver. The Georgia Tort Claims Act, OCGA § 50-21-20 et seq., provides a limited waiver of sovereign immunity for torts committed by State employees acting within the scope of their employment. But there are exceptions to the limited waiver. Under OCGA § 50-21-24, the State remains immune for losses resulting from performance of a discretionary function[.]

(Citations and punctuation omitted.) *Bd. of Public Safety v. Jordan*, 252 Ga. App. 577, 583 (1) (556 SE2d 837) (2001); see also *Ga. Dept. of Human Svcs., v. Spruill*, 294 Ga. 100, 105 (2) (751 SE2d 315) (2013); OCGA §§ 50-21-23 and 50-21-24 (2); Ga. Const. of 1983, Art I, Sec. II, Par. IX.

A "discretionary function or duty" is defined as "a function or duty requiring a state officer or employee to exercise his or her policy judgment in choosing among alternate courses of action based upon a consideration of social, political, or

7

economic factors." OCGA § 50-21-22 (2). As the Supreme Court of Georgia has indicated, "for the discretionary function exception to apply, it must be shown that a state officer or employee was afforded discretion with respect to the conduct that is alleged to amount to a tort, that an exercise of the discretion afforded amounts to "a policy judgment based upon a consideration of social, political, or economic factors." (Citation and punctuation omitted.) *Spruill*, 294 Ga. at 106 (2); see also *Edwards v. Dept. of Children & Youth Svcs.*, 271 Ga. 890, 892 (525 SE2d 83) (2000) (expanding the exception to social, political and economic policy factors); *Brantley v. Dept. of Human Resources*, 271 Ga. 679, 680 (523 SE2d 571) (1999) ("when properly construed, the exception protects only governmental actions and decisions based on considerations of public policy") (citation and punctuation omitted); *Dept. of Transp. v. Brown*, 267 Ga. 6, 7 (1) (471 SE2d 849) (1996); *Cowart v. Ga. Dept. of Human Svcs.*, 340 Ga. App. 183, 184-185 (796 SE2d 903) (2017). Also, "[t]he discretionary function exception serves to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort[.]" (Citation omitted.) *Spruill*, 294 Ga. at 106 (2). Nevertheless, we must be cautious not to interpret the exception so broadly that it effectively "swallow[s] the waiver." (Citation omitted.) *Brantley*, 271 Ga. at

8

682; *Brown*, 267 Ga. at 7 (1). Thus, in order to determine whether the discretionary function exception applies in this case to preserve GMC's sovereign immunity status, we must examine two factors: whether the JROTC instructor's actions were discretionary on the day O'Donnell suffered her injuries, and, if so, were his actions based on considerations of public policy. *Spruill*, 294 Ga. at 106 (2).

(a) *Whether the JROTC instructor's actions were discretionary*

We must first consider the extent to which GMC's disciplinary policy granted discretion to its JROTC instructors. *Cowart*, 340 Ga. App. at 185. The record shows that bullring consisted of a set of approved physical exercises in accordance with the JROTC's SOPs and the army PRT manual. The SOPs state that the "[e]xercises are directed by the JROTC instructor and will be an approved Army PT exercise as listed in this . . . SOP." However, the SOPs do not provide specifics as to how the instructor is to conduct or direct the exercises, and, according to school personnel, the instructor had discretion to decide which exercises were performed, as well as the duration of those exercises.

The JROTC instructor who conducted bullring on the day O'Donnell was injured specifically stated that he followed the SOPs in conducting retraining. He also stated that he was permitted the discretion to use whatever exercises were in the book,

9

and there was no standard procedure for which exercises to do first. Notably, O'Donnell admitted that bullring changed according to who the instructor was. As such, the SOPs allowed for some discretion and choice in the implementation of the exercise procedure.

Therefore, we cannot conclude that the SOPs create a ministerial act that would preclude immunity. While it is true that the instructor was required to follow the SOPs and perform only those approved exercises indicated therein, the SOPs afforded the instructor the ability to choose from a number of exercises and to determine their duration. Thus, the instructor's decisions in executing the retraining program did not amount to "routine" matters, and strongly suggest that the discretionary function exception should apply. See *Strand v. U. S.*, 233 FSupp3d 446, 456-457 (III) (B) (D. Md. 2017) (rules and documents governing how counselors supervised campers did not require any specific, mandatory supervisory course of conduct, but instead demanded that counselors use discretion); *Spruill*, 294 Ga. at 106-109 (2) (exception does not extend to an exercise of a more routine discretion, but did apply where personnel were afforded discretion to determine how best to proceed with child abuse investigations, despite DFCS policy imposing specific requirements on the handling of the investigations); compare *Lewis v. Dept. of Human Resources*, 255 Ga. App.

805, 811 (567 SE2d 65) (2002) ("[a] ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty.") (citation omitted). Accordingly, the JROTC instructor's decisions on how to carry out bullring were discretionary.

(b) *Whether the JROTC instructor's discretionary acts were based on considerations of public policy*

We next consider whether those discretionary acts were based on considerations of public policy. O'Donnell argues that GMC's use of discretion in creating a discipline policy for the school, which included bullring, does not mean that the instructor's actions fall under the discretionary function exception. She argues that the discretion GMC used to create its general disciplinary policy is not the act that injured O'Donnell; rather, the act at issue is that of the instructor and his implementation of an alleged "excessive and unduly severe" bullring period on the day of the incident. We disagree.

We cannot examine the instructor's actions in a vacuum. Rather, we must evaluate the discretion afforded the instructor in connection with the policy that governed it. As we explained in *Spruill*, we look to federal law for guidance in construing our discretionary function exception because the definition under the

11

GTCA is almost identical to the definition developed by the federal courts. *Spruill*, 294 Ga. at 106 (2), n. 12.

In *U. S. v. Gaubert*, 499 U. S. 315, 323 (II) (111 SCt 1267, 113 LE2d 335) (1991), the Supreme Court of the United States held that, where the legislature has delegated the authority to an independent agency to implement provisions of a regulatory statute,

> there is no doubt that planning-level decisions establishing programs are protected by the discretionary function exception, as is the promulgation of regulations by which the agencies are to carry out the programs. In addition, the actions of [state] agents involving the necessary element of choice and grounded in the social, economic, or political goals of the statute and regulations are protected.

*Gaubert*, 499 U. S. at 323 (II). The Supreme Court further held that "if a regulation allows the employee discretion, the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations." *Gaubert*, 499 U. S. at 324 (II). Moreover, "[w]hen established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a [state] agent to exercise discretion, it must be presumed that the agent's acts are grounded

12

in policy when exercising that discretion." Id.; see also *Strand v. U. S.*, 233 FSupp.3d at 455 (III) (B). And "[t]he focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis." *Gaubert*, 499 U. S. at 325 (II).

In applying these principles to the instant case, we look to the College's establishment as a military school. Pursuant to OCGA § 20-3-560, the Georgia General Assembly established the College to "be a state-wide institution dedicated to providing a high-quality *military* education to the youth of this state." (emphasis supplied). In creating the Board of Trustees of GMC, the General Assembly gave it the power to "determine the policy and shape the conduct of the college." OCGA § 20-3-546 (3). In utilizing this authority granted to it, GMC applied its discretion in creating and implementing a disciplinary policy for the College, as a *military* school, through the use of military-style drills to correct a student's behavior. Thus, the decisions on which exercises were performed, as well as the duration of those exercises, implicated GMC's goal to provide military-style discipline to its students and, therefore, were decisions expressive of public policy considerations to operate

13

the College as a military school. See *Edwards*, 271 Ga. at 892 ("The plain meaning of the statutory exception is that the state employee must exercise a policy judgment in choosing among various alternative actions based on social, political, and economic factors.") (punctuation omitted); *Strand*, 233 FSupp.3d at 457-458 (III) (B) (1) (holding that the counselor's decisions about supervision of campers in the locker room implicated the camp's goals to promote the policies of leadership and independence on the part of the campers); see also *Spruill*, 294 Ga. at 110 (b) (discretionary decisions made by DFCS personnel on how to investigate child abuse allegations were decisions that necessarily implicated social, political, and economic policy considerations).

Accordingly, the implementation of bullring is an extension of the College's public policy considerations as a military school, and the instructor's judgment regarding the exercises performed during bullring is the very type of discretion that the exception is designed to protect.[4] *Strand*, 233 FSupp.3d at 457 (III) (B) (1). And

[4] Our conclusion here does not result in the exception "swallow[ing] the waiver" because the decision as to which exercises to perform and the duration of those exercises, again, are exemplary of GMC's policy considerations to provide military-style education and discipline to its students as a whole. Compare *Brantley*, 271 Ga. at 682 ("the decision to leave a two-year-old child unattended in a swimming pool is an insufficient basis on which to invoke the discretionary function exception."); *Brown*, 267 Ga. at 7 (1) ("[w]hether to buy copier paper from a

14

we do not second-guess legislative and administrative decisions grounded in policy considerations through an action in tort. Id. at 458 (III) (B) (1); see also *Spruill*, 294 Ga. at 106 (2).

Finally, we note that O'Donnell's reliance on *Brantley*, *Edwards*, and *Ga. Dept. of Human Resources v. Bulbalia*, 303 Ga. App. 659 (694 SE2d 115) (2010) in support of her argument that the discretionary function exception does not apply to GMC is misapplied here. *Brantley*, *Edwards*, and *Bulbalia* all involve decisions relating to the routine care of children, and the court's analysis in those cases involved circumstances where the decisions made by the state actors were not reliant on considerations of public policy. See *Brantley*, 271 Ga. at 682 (leaving a child unattended in a swimming pool is not a policy decision and is not the type of governmental decision that should be protected); see also *Edwards*, 271 Ga. at 892 (state employees' decision on the type of emergency medical care to provide Edwards did not involve policy judgments); *Bulbalia*, 303 Ga. App. at 663 (1) (foster parents' decision to leave child in the care of a non-approved caregiver did not involve a policy decision).

---

particular vendor, and in which colors, are decisions that might be affected by all three [social, political, or economic] factors, but they are not policy decisions.").

15

We thus conclude that the discretionary function exception to the waiver of sovereign immunity applies in this case, and O'Donnell's claims are therefore barred by sovereign immunity. Accordingly, the trial court erred in denying GMC's motion to dismiss.

2. GMC asserts that OCGA § 20-2-1000 (b) provides an alternate basis for its immunity, while O'Donnell argues that OCGA § 20-2-732 provides a separate waiver of immunity. GMC is a state entity, and OCGA § 50-21-25 provides that the GTCA is the exclusive remedy for any tort committed by a state officer or employee. Therefore, these statutes do no apply. In light of our conclusion in Division 1 that GMC is entitled to immunity, these arguments are without merit.

*Judgment reversed. Doyle, P. J., and Coomer, J., concur.*