NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-5656-13T2

YVIETTA MATISON,

    Plaintiff-Respondent,

v.

MARK LISNYANSKY,

    Defendant-Appellant.

APPROVED FOR PUBLICATION

January 13, 2016

APPELLATE DIVISION

_____

Argued November 12, 2015 — Decided January 13, 2016

Before Judges Fuentes, Koblitz and Gilson.

On appeal from Superior Court of New Jersey, Chancery Division, Bergen County, Docket No. FM-02-1572-10.

Scott Adam Laterra argued the cause for appellant (Laterra & Hodge, LLC, attorneys; Mr. Laterra and Jeffrey B. Hodge, on the brief).

Bruce J. Ackerman argued the cause for respondent (Pashman Stein, PC, attorneys; Mr. Ackerman, Kamilla B. Rodrigues, and Tadd J. Yearing, on the brief).

The opinion of the court was delivered by

KOBLITZ, J.A.D.

We dismiss this appeal based on the legal doctrine of fugitive disentitlement.  A father may not obtain the protection

of our judicial system to appeal a palimony and custody default judgment while he remains outside of the country avoiding arrest on an outstanding child-support bench warrant.

Defendant Mark Lisnyansky appeals from the trial court's June 20, 2014 order denying his motion to vacate a May 1, 2013 default judgment, which awarded plaintiff Yvietta Matison palimony and custody of the couple's twin children, who were born in 2004. Prior to the default hearing, a warrant for defendant's arrest had been issued due to his failure to pay court-ordered child support. See R. 1:10-2; Pasqua v. Council, 186 N.J. 127, 140 (2006) (stating that a parent is subject to criminal contempt proceedings pursuant to Rule 1:10-2 when the "parent fails to abide by a court-ordered child support obligation"). On the day of the hearing, defendant was in Russia and did not personally appear before the trial court.

According to plaintiff, before she came to the United States in March 2006, defendant purchased a home valued at approximately $1.9 million in Franklin Lakes and paid for substantial renovations to the home. He also provided a nanny, interior decorator, and secretary. During this time, defendant returned to Europe to conduct business and plaintiff remained in the Franklin Lakes home with the children and their nanny. He subsequently sold the property and plaintiff and the children

moved to Tenafly where the children were enrolled in private school. Defendant continued to provide support to plaintiff from abroad.

In 2012, after defendant stopped supporting his children, plaintiff obtained a court order for child support. The April 27, 2012 support order states: "A writ of Ne Exeat shall remain entered against defendant" and requires that a "bond or alternate security, if any[,] shall be posted in an amount to be determined by the Court upon receipt of defendant's revised Case Information Statement." The order also states: "The Warrant for defendant's arrest shall remain outstanding until he satisfies his support arrears and complies with the other terms of this Order."

After a number of adjournments, the court scheduled the matter for trial on December 4, 2012. Defendant sought another adjournment, which the trial court denied. Defendant then failed to appear for the trial and discharged his attorney. The court entered a default against defendant and held a four-day hearing on plaintiff's claims for relief. On May 1, 2013, the trial court entered a default judgment. Defendant later moved to vacate the default judgment, one day prior to the one-year limit set forth in Rule 4:50-2. When this motion was denied, he filed this appeal through counsel. While defendant initially

submitted himself to New Jersey's jurisdiction by filing for relief here, after the warrant was issued he left the country and became a fugitive. The child support bench warrant first issued in 2012 remains outstanding against him. Neither party having raised the issue, we directed the parties at oral argument to brief the issue of fugitive disentitlement.[1]

The fugitive disentitlement doctrine bars a fugitive from seeking relief in the judicial system whose authority he or she evades. Matsumoto v. Matsumoto, 171 N.J. 110, 120 (2002). The doctrine is applicable to both civil and criminal cases. Id. at 128-29. In Matsumoto, Justice Long set forth the standards for application of the doctrine:

> [T]he party against whom the doctrine is to be invoked must be a fugitive in a civil or criminal proceeding; his or her fugitive status must have a significant connection to the issue with respect to which the doctrine is sought to be invoked; invocation of the doctrine must be necessary to enforce the judgment of the court or to avoid prejudice to the other party caused by the adversary's fugitive status; and invocation of the doctrine cannot be an excessive response.
>
> [Id. at 129.]

Justice Long underscored that the fugitive disentitlement doctrine is not to be imposed as a punishment, but as an

---

[1] We have ignored all facts set forth in these briefs that were not provided to the trial court.

invocation of the court's inherent power to enforce its orders "against those who have evaded them by fleeing either physically or constructively." Id. at 135.

Here, defendant has been avoiding his court-ordered responsibility to support his two children while at the same time seeking to be heard by the court with regard to other issues in the litigation. He seeks to avoid the imposition of the doctrine because one of the issues in the case involves custody. We agree that the doctrine is not generally consistent with a proper analysis of the best interests of the child. See id. at 133 (stating that "whatever limits the fugitive disentitlement doctrine might impose in other settings would not be applicable in a custody case in which no enforcement issue exists"). Here, however, defendant has been afforded contact with his children by way of continued "supervised parenting time to be arranged as between the parties." Defendant offers no custodial alternative, nor did he complain about custody throughout the litigation — waiting until the last possible date to file a motion to vacate default judgment. He may always reopen the issue of custody should he be in a position to offer his children a viable custodial alternative. See Hand v. Hand, 391 N.J. Super. 102, 105 (App. Div. 2007) (stating that a party can modify a custody order by demonstrating "changed

circumstances that affect the welfare of the children"). We decline to afford him the protection of the court while he flaunts the court's authority from overseas.

This appeal is therefore dismissed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5656-13T2