**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0909-17T2

AMELIA MANYA EMILY ORT,

    Plaintiff-Respondent,

v.

ABRAHAM ORT,

    Defendant-Appellant.

_____

Argued February 13, 2019 – Decided March 11, 2019

Before Judges Koblitz, Currier and Mayer.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Ocean County, Docket No. FM-15-0990-00.

David Perry Davis argued the cause for appellant.

John P. Paone, Jr. argued the cause for respondent (Law Offices of Paone, Zaleski & Murray, attorneys; John P. Paone, Jr., of counsel and on the brief; John P. Paone, III, and Andrew J. Economos, on the brief).

PER CURIAM

Defendant Abraham Ort appeals from a September 15, 2017 order denying his motion seeking relief with regard to past-due support for his now-emancipated children. The parties were married in 1977, had thirteen children and divorced in 2003, agreeing to binding arbitration with regard to all financial divorce issues. Defendant relocated without the children to Israel in 2007, after the final arbitration decision was entered as a judgment.[1] A child-support bench warrant[2] has been outstanding since 2008. Although defendant has unsuccessfully litigated in New Jersey courts for many years without the imposition of the fugitive disentitlement doctrine,[3] we do so now and dismiss this appeal.

---

[1] The three-member arbitration panel stated: "Defendant's (husband's) testimony was not credible . . . . We have considered [d]efendant's efforts in subverting our orders and believe it will continue."

[2] The support was not collected by the Probation Division and the warrant was thus issued by the court without probation involvement. See Pasqua v. Council, 186 N.J. 127, 141 n.2 (2006) (discussing child support enforcement procedures utilized by the Probation Division).

[3] Ort v. Ort, No. A-5406-12 (App. Div. Jan. 14, 2015); Ort v. Ort, No. A-1431-07(App. Div. Apr. 28, 2009); Ort v. Ort, No. A-3535-06 (App. Div. June 17, 2008); Ort v. Ort, No. A-6140-02 (App. Div. May 13, 2005); Ort v. Ort, No. A-3388-02 (App. Div. Dec. 16, 2003), certif. denied Ort v. Ort, 179 N.J. 311 (2004); see also Ort v. Ort, 428 N.J. Super. 290 (Ch. Div. 2012) (emancipating daughter at her request).

A-0909-17T2

In the litigation prior to the current motion, on May 31, 2013, when defendant's child support arrears amounted to approximately $561,595, the judge reduced the purge amount to $100,000, upon payment of which defendant's arrest warrant would be vacated. The judge denied without prejudice defendant's motion to reduce ongoing child support. The judge also denied without prejudice plaintiff's motion to apply the fugitive disentitlement doctrine. He noted that he had adjusted the purge figure significantly, and "[i]f [defendant] doesn't pay the purge figure and he comes back to this [c]ourt again asking for more relief and [plaintiff's counsel] re-raises the issue of the Fugitive Act, this may be a case where it's applied, quite frankly."

Nonetheless, when defendant did file another motion before a different judge, without having paid the purge amount, that doctrine was not specifically invoked by the judge hearing the motion. Defendant filed a motion in March 2017 seeking (1) a final determination of his child support arrears; (2) the emancipation of the minor children at age eighteen; (3) the removal of his obligation to maintain life insurance; (4) an accounting from plaintiff of the children's custodial accounts; (5) funding by plaintiff of the custodial accounts; (6) an adjustment of defendant's child support obligation as of 2007, discharge of the bench warrant for his arrest, and a judgment against plaintiff; (7) a

judgment against plaintiff for more than $800,000 in favor of the Regina Ort Trust; (8) plaintiff's case information statement; (9) a restraint on plaintiff from dissipating assets; and (10) counsel fees.

On September 15, 2017, defendant remained in Jerusalem while his motion was heard. At the request of a prior judge, the parties had previously briefed the issue of the applicability of the fugitive disentitlement doctrine to defendant. The court, while not expressly ruling on fugitive disentitlement, stated:

> I've read this entire file. . . . in view of everything I've read here, I don't think there's a single thing that I can believe that [defendant] has ever said. . . . it's one of the most amazing cases I've ever seen. Why [defendant] was not prosecuted for criminal contempt of court is probably because it's so hard to do.
>
>     . . . .
>
> [O]ne thing that is very troubling to the [c]ourt is that [] defendant continues to be in open contempt of the court. This file is replete with every judge that has touched this finding that he is in contempt of court, that -- that he has intentionally thwarted the [c]ourt's attempts to get the children their rightful support from their father, who apparently had certain assets at his disposal. There were real estate assets that he had an interest in with his brother. He was receiving rents. All these things. There's a long history that I'm not going to relitigate.

A-0909-17T2

> But ultimately, a warrant was issued for his arrest. And the judge . . . entered a $100,000 purge amount. [The judge], apparently, did that . . . believing that the defendant had the ability to pay that amount, and he has not. He has not attempted to. He did not appeal it. He has made no application except for the most recent one now years later to set that aside. I am not going to set that aside. The warrant will remain. The purge amount will remain at $100,000.
>
> . . . .
>
> I'm also finding that because there's been such bad faith and unclean hands, that the defendant, in any further application, pay that purge amount and appear before the [c]ourt to answer questions as to why he has not lived up to the obligations that he's been previously ordered to do. . . .
>
> I have accepted the accounting provided by the plaintiff that from what has already been entered as arrears there has been an additional $102,767.17 accumulated in arrears to the end of his obligation.

The court issued an order denying defendant's motion and granting plaintiff's cross-application, writing:

> Defendant comes to the [c]ourt with unclean hands. He is also subject to a [b]ench [w]arrant with a purge amount of $100,000[] since June 13, 2013. Much of [d]efendant's application is an attempt to re-litigate issues which have been long decided. The [c]ourt will not entertain any further application by [defendant] until such time as [d]efendant posts with the [c]ourt the $100,000[] purge amount.

A-0909-17T2

The order granted plaintiff $10,000 in counsel fees. The order also provided defendant relief, stating: "All of the remaining children of the marriage are hereby emancipated and [defendant] shall have no further child support obligation."

Defendant argues that plaintiff behaved fraudulently with regard to New York properties and a charitable trust founded during the marriage, that the children were well-supported by income from various marital assets, and that he was unable to contribute to their support because his work as an unsalaried rabbi in Israel prevented him from doing so. He further argues that because all of the children are emancipated, child support arrears should be viewed as any other debt and the warrant vacated. We make no assessment of the merits of these issues.

Justice Virginia Long, writing for our Supreme Court, set forth the criteria for invoking the discretionary fugitive disentitlement doctrine:

> the party against whom the doctrine is to be invoked must be a fugitive in a civil or criminal proceeding; his or her fugitive status must have a significant connection to the issue with respect to which the doctrine is sought to be invoked; invocation of the doctrine must be necessary to enforce the judgment of the court or to avoid prejudice to the other party caused by the adversary's fugitive status; and invocation of the doctrine cannot be an excessive response.

6

[Matsumoto v. Matsumoto, 171 N.J. 110, 129 (2002).]

Defendant has been litigating his obligations determined by the agreed-upon arbitration from afar since it was first concluded. New Jersey courts have entertained his applications. Plaintiff has had to retain counsel to oppose them. Although provided relief through the reduction of the purge amount in 2013, defendant still has not subjected himself to the New Jersey courts. New Jersey has a rational system of adjudicating family disputes. We do not have debtors' prisons. See State v. Townsend, 222 N.J. Super. 273, 277 (App. Div. 1988) ("The Fourteenth Amendment precludes a state court from automatically revoking probation and imposing a prison term for nonpayment of restitution."). If defendant believes his arguments are valid, let him come to New Jersey and demonstrate the soundness of his reasoning. A litigant cannot use our system to his advantage without risking the ramifications of defeat. As we said in Matison v. Lisnyansky, 443 N.J. Super. 549, 552 (App. Div. 2016), "[w]e decline to afford [defendant] the protection of the court while he flaunts the court's authority from overseas."

Dismissed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0909-17T2